No. 122,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellant*,

v.

ARLANDO TROTTER,
*Appellee*.

SYLLABUS BY THE COURT

1.

Whether jurisdiction exists is a question of law over which appellate courts exercise unlimited review. When the record indicates a lack of jurisdiction, an appellate court has the duty to question jurisdiction on its own initiative. When the record establishes the absence of jurisdiction, an appellate court has the duty to dismiss the appeal.

2.

Standing is a component of subject matter jurisdiction. Whether a party has standing to raise an issue is a question of law over which we exercise unlimited review. A party without standing is essentially asking for an advisory opinion, which is beyond our jurisdiction to render.

3.

It is error for a trial court to raise, sua sponte, nonjurisdictional issues.

1

4.

A party may challenge a law as expressly violating a specific right under the First Amendment to the United States Constitution. At the same time, a party may also challenge a law as being so overbroad as to infringe upon protected First Amendment rights. But these constitutional challenges are distinct from one another.

5.

To have standing to challenge a law as expressly violating a specific right under the First Amendment to the United States Constitution, a party must establish that the disputed law affected him or her in some way. To establish that this law expressly violates a specific First Amendment right, a party must prove that the law constitutes a content-based law, not a content-neutral law. A content-based law is a law that regulates expression that the government purposely adopted because of disagreement with the expression. A content-neutral law is a law that the government adopted for a reason other than because of disagreement with the expression being regulated.

6.

To have standing to challenge a law as being so overbroad as to infringe upon rights protected by the First Amendment to the United States Constitution, a party need not establish that he or she was personally injured by the disputed law because the mere existence of the disputed law may cause persons not before the court to refrain from conduct protected by the First Amendment. To establish that this law is unconstitutionally overbroad contrary to the First Amendment, a party must prove (1) that the protected activity is a significant part of the law's target and (2) that there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications. If a party argues that the law prohibits protected First Amendment conduct, not merely protected First Amendment speech, that party must further prove that the law's overbreadth is not only real, but substantial, in relation to the law's plainly legitimate sweep.

7.

Municipalities have broad police powers to enact ordinances regulating or restricting certain activities to promote the health, safety, and welfare of the public.

8.

The City of Wichita's after-hours establishment licensing ordinance, Wichita Municipal Ordinance 3.06.030.A., is not unconstitutionally overbroad as its application does not create a realistic danger of significantly compromising Wichitans' expressive rights under the First Amendment to the United States Constitution.

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed July 16, 2021. Reversed and remanded with directions.

*Jan Jarman*, assistant city attorney, of Wichita, for appellant.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

GREEN, J.: The City of Wichita (City) appeals the district court's order dismissing Arlando Trotter's municipal charges for violating Wichita Municipal Ordinance (W.M.O.) 3.06.030.A. in operating an unlicensed after-hours establishment and for violating W.M.O. 3.30.030.A. in operating an unlicensed entertainment establishment. The district court dismissed *both* of Trotter's charges because it determined that the City's after-hours establishment licensing framework was so overbroad that it impermissibly infringed on a person's First Amendment expression rights under the United States Constitution. And on appeal, the parties dispute if the district court dismissed both of Trotter's charges because it determined that the City's after-hours establishment licensing framework expressly violated the First Amendment right to assemble. But regardless of this dispute, the record on appeal establishes that the district court erred when it

dismissed Trotter's municipal charges for violating W.M.O. 3.06.030.A. and for violating W.M.O. 3.30.030.A. because the City's after-hours establishment licensing framework was not unconstitutional based on the arguments properly before the district court. As a result, we reverse the district court's dismissal order and remand to the district court for further proceedings consistent with this opinion.

*Facts*

In fall 2018, the Wichita Police Department cited Trotter with violating W.M.O. 3.06.030.A., for operating an unlicensed "after-hours establishment," and with violating W.M.O. 3.30.030.A., for operating an unlicensed entertainment club.

W.M.O. 3.06.030.A. provided that absent certain exceptions, it was "unlawful for any person . . . to own, lease, manage, maintain or operate an after-hours establishment without first obtaining a license." W.M.O. 3.06.020, the provision that defined "after-hours establishment," further stated:

> "[A]ny venue for a series of events or ongoing activity or business, occurring alone or as part of another business, to which the public is invited or allowed which is open anytime between midnight and 6:00 a.m., where individuals gather and is not otherwise licensed for the sale of alcoholic beverages or cereal malt beverages or otherwise licensed by the City of Wichita or state of Kansas for a business at that location. This term shall not include hospitals, hotels, motels or other boarding houses nor is it intended to apply to private homes where specifically invited guests gather."

On the other hand, W.M.O. 3.30.030.A. stated that it was "unlawful for any person . . . to own, lease, manage, maintain or operate a[n] . . . entertainment establishment without having first obtained a license from the City Treasurer."

4

Eventually, Trotter challenged his municipal charges in Wichita Municipal Court. But the municipal court found Trotter guilty of violating both W.M.O. 3.06.030.A. and W.M.O. 3.30.030.A. For his W.M.O. 3.06.030.A. violation, the municipal court ordered Trotter to pay a $200 fine and to serve 12 months on nonreporting probation, for which he had an underlying 90-day jail sentence. Conversely, for his W.M.O. 3.30.030.A. violation, the municipal court simply ordered Trotter to pay a $200 fine.

Trotter timely appealed his municipal court convictions to the Sedgwick County District Court. He requested that the district court hold a jury trial on whether he violated W.M.O. 3.06.030.A. and W.M.O. 3.30.030.A. Once the district court docketed Trotter's appeals, Trotter's municipal court convictions were conditionally vacated pending the district court's de novo review of his appeal. See *City of Salina v. Amador*, 279 Kan. 266, Syl. ¶ 5, 106 P.3d 1139 (2005) (holding that "[a]s an appeal from a municipal court conviction mandates a trial de novo in district court, the appealed conviction before the municipal court must be conditionally vacated"). After this, Trotter moved to dismiss his charge for violating W.M.O. 3.06.030.A. in operating an unlicensed after-hours establishment.

In his motion, Trotter contended that his W.M.O. 3.06.030.A. charge should be dismissed because W.M.O. 3.06.30.A. was unconstitutionally vague, unconstitutionally overbroad, and otherwise expressly contrary to his right to assemble under the First Amendment. As for W.M.O. 3.06.030.A.'s alleged vagueness and overbreadth, Trotter seemingly argued that the ordinance was both impermissibly vague and overbroad because it could be interpreted as requiring many people and organizations to obtain licenses to engage in expressive activity between midnight and 6 a.m. In making this argument, Trotter provided many examples of after-hours activities or businesses that he believed could be affected by W.M.O. 3.06.30.A.'s licensing requirement. In particular, he alleged that churches holding masses and serving communion between midnight and 6 a.m. would need a license under W.M.O. 3.06.030.A. And he implied that W.M.O.

5

3.06.030.A. was unconstitutionally vague and overbroad because W.M.O. 3.06.020.A.'s definition of "after-hours establishment" included a nonexhaustive list of factors, that is, activities done between midnight and 6 a.m. at a specific venue. For example, if two people were present at the venue, this would result in the City deeming the venue an after-hours establishment.

Also, although Trotter never cited authority to support his contention that W.M.O. 3.06.030.A. expressly violated his First Amendment right to assemble, he argued that W.M.O. 3.06.030.A. expressly violated this right because it sought to "regulate persons who 'gather.'" In making this argument, Trotter emphasized that W.M.O. 3.06.020.A. defined "after-hours establishment" as venues "where individuals *gather*." (Emphasis added.) He argued that by including this language in W.M.O. 3.06.020.A., the City sought to create "a blanket prohibition" against people assembling after hours.

On the other hand, the City argued that the district court should deny Trotter's motion to dismiss because Trotter had failed to establish that W.M.O. 3.06.030.A. was unconstitutional. It argued that W.M.O. 3.06.030.A. was not unconstitutionally vague because its plain language sufficiently put Wichitans on notice about the City's after-hours establishment licensing scheme. It further argued that W.M.O. 3.06.030.A. was not unconstitutionally overbroad because the ordinance did not prohibit any conduct that was not already illegal. Also, it argued that W.M.O. 3.06.030.A. did not expressly violate the First Amendment right to assemble because it merely regulated how, where, and when an expression could occur—that this served a substantial governmental interest of minimizing the safety and nuisance risks associated with after-hours establishments. In making this argument, the City pointed out caselaw from many jurisdictions indicating that a licensing ordinance does not expressly violate a person's First Amendment right to assemble if it is content-neutral and narrowly tailored to serve a substantial governmental interest.

After the City filed its response, the district court held a hearing on Trotter's appeal. At the start of the hearing, the district court granted the City's pending motion to consolidate Trotter's appeals. It then considered the merits of Trotter's motion to dismiss. The parties repeated the arguments made in their respective filings. At the end of the hearing, the district court took the parties' arguments under advisement.

But the next day, the district court issued a memorandum on Trotter's motion to dismiss. In its memorandum, the district court sua sponte concluded that Trotter lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague. As for his remaining constitutional challenges, although the district court determined that Trotter had standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad and as expressly contrary to the First Amendment right to assemble, it further noted that it believed Trotter's case "involves more constitutional issues than those raised, at least directly, by the parties." It speculated that W.M.O. 3.06.030.A. could be challenged as violating a person's right against unreasonable searches under the Fourth Amendment to the United States Constitution because W.M.O. 3.06.040.B.10. required persons with after-hours establishment licenses to allow City personnel inside their establishment for inspection at any time. Relying on this speculation, the court ended its memorandum by giving the parties the opportunity to submit supplemental briefing on the Fourth Amendment's application to W.M.O. 3.06.030.A.

Shortly afterwards, Trotter filed a supplemental brief addressing the Fourth Amendment's application to W.M.O. 3.06.030.A. In his supplemental brief, Trotter cited no authority on the Fourth Amendment's application to licensing ordinances. Even so, Trotter asserted that W.M.O. 3.06.030.A. violated the Fourth Amendment right against unreasonable searches since after-hours establishment licensees must consent to inspections of their establishment by City personnel at any time to obtain a license.

The district court granted Trotter's motion to dismiss. In doing so, the court first repeated its previous ruling that Trotter lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague. After repeating this ruling, the district court determined that Trotter's remaining arguments about W.M.O. 3.06.030.A. being unconstitutionally overbroad and about W.M.O. 3.06.030.A. expressly violating the First Amendment right to assemble were legally identical:  "Because the challenge of overbreadth in this case is based on First Amendment arguments[,] including free exercise of religion, free assembly, and free speech, the defendant's two remaining objections under the First Amendment and for overbreadth are construed as a single challenge." Next, the district court reviewed certain provisions of Chapter 3.06—the chapter of the Wichita Municipal Code addressing after-hours establishments—and noted that there is little Kansas caselaw addressing constitutional challenges to licensing ordinances.

Lastly, the district court provided the following analysis in support of its decision to dismiss Trotter's charges for operating an unlicensed after-hours establishment in violation of W.M.O. 3.06.030.A. *and* for operating an unlicensed entertainment establishment in violation of W.M.O. 3.30.030.A.:

> ". . . [A] brief overview of a significant instance of behavior that is Constitutionally immune from criminalization will provide some perspective on why the ordinance challenged in this case is unconstitutional. In 1965, the U.S. Supreme Court dealt with the Bill of Rights to the U.S. Constitution in the case of *Griswold v. Connecticut*, 381 U.S. 479[, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965)]. The Court discussed the rights of association contained in the First Amendment, the Third Amendment right against having soldiers quartered in one's home, the Fourth Amendment's protection of security in one's person, house, papers, and effects, and the Fifth Amendment right against self-incrimination. Some court cases dealing with these rights were then said to 'suggest that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance.' With no intention of irony apparent, the Court then struck down a state law against the sale of products sold for the specific purpose of preventing giving life. (A

8

penumbra is a surrounding area or periphery of uncertain extent. Emanation means the act of coming or flowing forth from something.) This was all in the name of Privacy and emanations of same into the penumbras of the assorted first ten amendments cited. The penumbras bloomed wider in 1973. *Roe v. Wade*, 410 U.S. 113[, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973)]. In North America, 36 million people live in Canada, 330 million in the U.S., and 126 million in Mexico. Since 1973, 61 million people have been aborted, by Constitutional right, in the United States. In other words, this historically criminal behavior has accounted for the dispatch of nearly twice the population of Canada, nearly half the population of Mexico. For every 5 people currently living in the United States, there is a sixth person who has died by abortion over the last 45 years. These numbers are readily verifiable and not disputed by respected voices on either side of the issue. This is *the* issue marking the limit of behavior that cannot be touched by government, the highest water line up the beach from the sea change about what laws a people can and cannot pass through a State legislature.

  . . . .

  "The parties argue about the application of the ordinance to the free exercise of religion in churches and by analogy to cases dealing with prostitution under its various Also-Known-As-es. In a dispute about overbreadth, these are relevant arguments. The court is, however, more taken aback by the criminalization of peaceable and otherwise lawful conduct in private homes. The ordinance creates, unconstitutionally, the following problems.

  (1) People who live in non-residentially zoned areas of Wichita are excluded from the provision exempting residential gatherings in private homes. Thus, the property rights of people in their homes in Wichita are made unequal without sufficient justification, or even a self-evident purpose. Assuming a Wichitonian [*sic*] otherwise complies with the ordinance, if he is a homeowner/renter in an exclusively residential part of Wichita[,] then he can have recurring unlicensed gatherings after midnight, but if he resides in a not exclusively residential part of Wichita[,] he is committing crime by doing so.

  (2) Wichita has at least two residential colleges. Dormitory occupants could not regularly gather in a dormitory room—for any purpose—if the gathering passed midnight. It is not that they could not gather without a license. It is that they cannot gather at all because they are under twenty-

9

one and are prohibited from obtaining a license. Example: Sophomore Sammy hosts in his dormitory room video game playing every Friday night until 3:30 a.m., or more realistically, every single night of the week. This is a crime under the ordinance. Another example, perhaps less realistic, is a group of students gathering to study regularly in a dormitory room until 12:30 a.m. This is also a crime under the ordinance.

(3) Wichita homeowners and renters under the age of twenty-one (including married persons) are, in non-exclusively residential areas of Wichita, prohibited from hosting regular gatherings, even if otherwise peaceful and lawful, in the privacy of their residences if the gathering runs over the midnight hour or commences prior to 6:00 a.m.

(4) Any Wichitonian [*sic*] who, in his private residence, teaches piano lessons, irons clothes for hire, bakes pies or decorates cakes for sale, or conducts any other commercial or business activity is committing crime by regularly hosting guests if the gatherings run pas[t] midnight.

(5) A Wichita resident decides to get the license so that he can host friends for a card game every Friday night until 2:00 a.m. Holding the license puts the resident in the position of a parolee (convict) subject to a parole agreement. 'A parolee who signs a parole agreement allowing suspicionless residential searches by his or her parole officer does not have a legitimate expectation of privacy in his or her home, and the State's interest in supervising parolees to prevent recidivism and promote reintegration is substantial.' *State v. Toliver*, 307 Kan. 945, 417 P.3d 253 (2018).

"Returning to the privacy penumbras radiating from the Bill of Rights, a Constitution that prohibits laws criminalizing making a market in that behavior also declares that this ordinance casts too wide a net. The examples above of behavior criminalized by the ordinance are examples of Constitutionally protected behaviors. It is not needed to multiply and expostulate every other protected behavior criminalized by the ordinance; these are sufficient to show that the law is unconstitutionally overbroad." [Citations omitted.]"

The City timely appealed the district court's order dismissing Trotter's charges for violating W.M.O. 3.06.030.A. and W.M.O. 3.30.030.A.

Yet, after the City filed its appeal but before it docketed its appeal with us, the district court amended its order to address our Supreme Court's decision in *Meats v. Kansas Dept. of Revenue*, 310 Kan. 447, 447 P.3d 980 (2019). This case was decided the same day when the district court issued its initial dismissal order. In *Meats*, our Supreme Court held that a statutory provision requiring vehicle drivers seeking administrative review of their driver's license suspensions to pay a $50 fee was unconstitutional because it lacked reasonable accommodations for indigent drivers to obtain review of their license suspensions contrary to those indigent drivers' procedural due process rights under the Fourteenth Amendment to the United States Constitution. 310 Kan. at 450. When amending its order in this case, the district court interpreted this holding to mean that "the City's ordinance may also be facially unconstitutional because it does not provide an indigency waiver for the license fee."

*What issues are properly before us?*

On appeal, the City's primary arguments are that the district court erred in granting Trotter's motion to dismiss because W.M.O. 3.06.030.A. is not unconstitutionally overbroad and does not otherwise expressly violate the First Amendment right to assemble. Nevertheless, the City asserts that before we consider the merits of its primary arguments, we must first consider if the district court erred in determining that Trotter had standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad or as expressly contrary to the First Amendment right to assemble. The City contends that Trotter lacked standing before the district court to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad and as expressly contrary to the First Amendment right to assemble because, before the district court, Trotter never established that his First Amendment rights were violated by W.M.O. 3.06.030.A. Also, the City argues that the district court erred when it amended its dismissal order to address our Supreme Court's decision in *Meats*. The City essentially contends that Trotter lacked standing to argue that

11

W.M.O. 3.06.030.A.'s lack of indigency waiver violated his due process rights because Trotter never applied for an after-hours establishment license.

Trotter responds that we should decline to consider the City's contention that he lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad. But Trotter concedes that if he had standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad, this involves a jurisdictional issue that we may consider for the first time on appeal. Trotter, however, argues that we should ignore the City's standing argument because the City never made it before the district court. As to his standing to challenge W.M.O. 3.06.030.A. as expressly violating the First Amendment right to assemble, Trotter agrees that we should not review this issue. According to Trotter, this issue is not properly before us because the district court "did not make an alternative finding that the City's ordinance was unconstitutional based upon the claim that it violated the Right to Assemble." Also, although he does not explain why, Trotter assumes that in its dismissal order, the district court determined that W.M.O. 3.06.030.A. violated the Fourth Amendment right against unreasonable searches. Lastly, Trotter argues that even though the district court sua sponte amended its dismissal order to address our Supreme Court's decision in *Meats*, we should still uphold the district court's ruling that W.M.O. 3.06.030.A. was unconstitutional for lacking an indigency waiver since this provision does, in fact, lack an indigency waiver.

Because of the jurisdictional problems raised by the City and indicated in the record on appeal, at oral arguments, we gave the parties the opportunity to submit supplemental briefing on the issue of standing.

In its supplemental brief, in addition to repeating its argument—that Trotter lacks standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad or as violative of his due process rights—the City further argues that Trotter lacks standing to challenge W.M.O. 3.06.030.A. as contrary to his Fourth Amendment rights. As with its procedural

due process argument, the City contends that Trotter lacks standing to challenge W.M.O. 3.06.030.A.'s requirement that after-hours establishment licensees must consent to inspections by City personnel as contrary to his Fourth Amendment right against unreasonable searches because Trotter never applied for an after-hours establishment license.

In his supplemental brief, Trotter outlines why he believes we have jurisdiction to consider whether W.M.O. 3.06.030.A. is unconstitutionally overbroad. He then argues that as long as he has standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad, this court has jurisdiction to consider this issue as well as whether W.M.O. 3.06.030.A. facially violates the First Amendment's right to assemble and the Fourth Amendment's right against unreasonable searches. According to Trotter, the preceding issues are not "distinct issues." Trotter additionally argues that "regardless of how [we] have determined the issue of standing," we have jurisdiction to consider whether W.M.O. 3.06.030.A.'s lack of indigency waiver violated his procedural due process rights because the City did not argue that he lacked standing to make this argument before the district court.

*Do we lack jurisdiction to consider if W.M.O. 3.06.030.A. is unconstitutionally vague?*

K.S.A. 2020 Supp. 60-2103(h) states that an appellee that desires to have adverse rulings reviewed by an appellate court must file a notice of cross-appeal no later than 21 days after the appellant filed his or her notice of appeal. The appellee's failure to cross-appeal in accordance with K.S.A. 2020 Supp. 60-2103(h) constitutes a jurisdictional bar that prevents us from reviewing his or her complaints about a district court's order. *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016). Also, whether we have jurisdiction to review a specific issue constitutes a question of law that we may raise on our own motion. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 459, 447 P.3d 959 (2019).

As previously noted, in his motion to dismiss, Trotter asked the district court to dismiss his charge for violating W.M.O. 3.06.030.A. because W.M.O. 3.06.030.A. was unconstitutionally vague. In granting Trotter's motion to dismiss, though, the district court ruled that Trotter lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague because he never "made vagueness objections as applied to himself personally."

Although Trotter has not tried to argue that W.M.O. 3.06.030.A. is unconstitutionally vague on appeal, it is important to note that Trotter has not filed a cross-appeal questioning any of the district court's rulings. As a result, we lack jurisdiction to consider any of the district court's adverse rulings against Trotter, including its ruling that he lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague. See *Lumry*, 305 Kan. at 553-54. Thus, even if Trotter had standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague, this issue is not properly before us.

> *Do we lack jurisdiction to consider if W.M.O. 3.06.030.A. violates the Fourth Amendment right against unreasonable searches by requiring licensees to consent to inspections by City personnel?*

"The requirement that a party have standing is a component of subject matter jurisdiction, which may be raised at any time, including upon the court's own motion." *Creecy*, 310 Kan. at 459. Whether a party has standing to raise an issue is a question of law over which we exercise unlimited review. A party without standing is essentially asking for an advisory opinion, which is beyond our jurisdiction to render. 310 Kan. at 460. Also, if the district court lacked jurisdiction to consider an issue, an appellate court also lacks jurisdiction to consider that issue. When the record establishes the absence of jurisdiction, an appellate court has the duty to dismiss the appeal. *State v. McCoin*, 278 Kan. 465, 467-68, 101 P.3d 1204 (2004).

As previously noted, before the district court granted Trotter's motion to dismiss, it sua sponte questioned whether W.M.O. 3.06.030.A. violated the Fourth Amendment right against unreasonable searches. And after sua sponte raising this issue, the district court provided both Trotter and the City the opportunity to address the Fourth Amendment's application to W.M.O. 3.06.030.A. When given this opportunity, Trotter filed supplemental briefing in which he contended that W.M.O. 3.06.030.A. expressly violated the Fourth Amendment's right against unreasonable searches. To support this argument, Trotter provided hypothetical examples of how W.M.O. 3.06.030.A. could be applied in a manner to infringe upon a person's Fourth Amendment right against unreasonable searches. Thus, he never argued that W.M.O. 3.06.030.A. expressly violated his Fourth Amendment right against unreasonable searches. Then, in its order granting Trotter's motion to dismiss, the district court noted that in *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965), the United States Supreme Court "discussed" the Fourth Amendment's right against unreasonable searches. Although the district court never explicitly ruled that W.M.O. 3.06.030.A. expressly violated the Fourth Amendment's right against unreasonable searches, a liberal reading of the district court's order indicates that it made this ruling based on its hypothetical applications of W.M.O. 3.06.030.A. on individuals' privacy rights.

In its appellant's brief, the City never takes issue with the district court's errant decision to sua sponte raise an argument in support of Trotter's dismissal motion. See *Huffmier v. Hamilton*, 30 Kan. App. 2d 1163, 1166, 57 P.3d 819 (2002) (holding that "[i]t is error for a trial court to raise, *sua sponte*, nonjurisdictional issues"). Instead, the City first addresses the district court's apparent ruling that W.M.O. 3.06.030.A. violates the Fourth Amendment's right against unreasonable searches in its supplemental brief, maintaining that Trotter lacks standing to make this argument because he never applied for an after-hours establishment license.

In his appellee's brief, Trotter assumes without explanation that the district court granted its motion to dismiss, in part, because W.M.O. 3.06.030.A. violated the Fourth Amendment. He concludes that we should affirm the district court's ruling because the City's after-hours establishment licensing framework requires persons to consent to searches of their after-hours establishments to obtain a license. See W.M.O. 3.06.040.B.10. According to Trotter, by requiring this consent, W.M.O. 3.06.030.A. violates the Fourth Amendment right against unreasonable searches because it requires individuals to waive their Fourth Amendment rights to obtain an after-hours establishment license. Also, Trotter contends in his supplemental brief that he has standing to challenge W.M.O. 3.06.030.A. as violating the Fourth Amendment because W.M.O. 3.06.030.A. is unconstitutionally overbroad.

But even if we were to assume for argument's sake that the district court determined that W.M.O. 3.06.030.A. expressly violated the Fourth Amendment right against unreasonable searches, it is readily apparent that the district court lacked jurisdiction to make this determination. Particularly, this is not Trotter's first appeal to our court. In *City of Wichita v. Trotter*, 58 Kan. App. 2d 781, 475 P.3d 365 (2020) (*Trotter*), Trotter argued that W.M.O. 3.30.030.A.'s provision requiring a license for an entertainment establishment was unconstitutionally vague, unconstitutionally overbroad, and otherwise directly contrary to the First Amendment and the Fourth Amendment. Yet, the *Trotter* court rejected Trotter's argument that W.M.O. 3.30.030.A. violated the Fourth Amendment right against unreasonable searches and held that Trotter lacked standing to make this argument:

> ". . . Trotter's . . . claim fails for a . . . fundamental reason:  Trotter never applied for an entertainment-establishment license. He was never subject to the regulatory investigations he now challenges and has no standing to contest the reasonableness of those regulatory requirements. See *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 461, 447 P.3d 959 (2019) (standing requires a person to '"show a cognizable injury and establish a causal connection between the injury and the challenged conduct"'). Any

16

decision we might render regarding the [Wichita Municipal] Code's inspection requirements would have no impact on Trotter's conviction for operating an entertainment establishment without a license.

"A party who lacks standing requests an advisory opinion, which is beyond our jurisdiction to render. 310 Kan. at 460. Accord *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283-84, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001) (declining to reach challenge to city's licensing framework for sellers of sexually explicit materials when business 'neither now pursues nor currently expresses an intent to pursue a license under Waukesha law'). Thus, we do not reach the merits of Trotter's challenge to the licensing framework's inspection requirements." 58 Kan. App. 2d at 801.

As in *Trotter*, Trotter here needed to apply for an after-hours establishment license as a condition precedent before he could properly challenge the City's specific rule—that an individual must consent to inspections by City personnel to obtain an after-hours establishment license—to argue a violation of *his* Fourth Amendment right against unreasonable searches. Because Trotter never applied for an after-hours establishment license, he suffered no cognizable injury from the City inspection rule he now complains about. As a result, before the district court, Trotter lacked standing to challenge W.M.O. 3.06.030.A., or more broadly the City's after-hours establishment licensing framework, as expressly violating his or anyone else's Fourth Amendment right against unreasonable searches. It therefore follows that the district court lacked jurisdiction to consider, let alone rule, that W.M.O. 3.06.030.A. violated the Fourth Amendment right against unreasonable searches. See *Creecy*, 310 Kan. at 459-60; *McCoin*, 278 Kan. at 468.

Also, Trotter's contention that he has standing to challenge W.M.O. 3.06.030.A. as violating the Fourth Amendment because he has standing to challenge W.M.O. 3.06.030.A. as unconstitutionally overbroad is patently meritless. Simply put, we must employ different standing tests when deciding whether a law is unconstitutionally overbroad in violation of the First Amendment's free expression right or whether a law is facially violative of the Fourth Amendment's right against unreasonable searches. See

17

*State v. Williams*, 299 Kan. 911, 919, 329 P.3d 400 (2014) (explaining that people have standing to challenge a law as unconstitutionally overbroad contrary to the First Amendment's expression rights without ever proving that they were personally injured by the disputed law); *Trotter*, 58 Kan. App. 2d at 801 (explaining that people have standing to challenge a law contrary to the Fourth Amendment's right against unreasonable searches only by showing they suffered a cognizable injury from the application of the disputed law).

As a result, even under the assumption that the district court determined that W.M.O. 3.06.030.A. expressly violated the Fourth Amendment right against unreasonable searches, the district court's determination is void as a matter of law because it lacked jurisdiction to do so. For this reason, the issue of whether W.M.O. 3.06.030.A. violated the Fourth Amendment's right against unreasonable searches is not properly before us.

> *Do we lack jurisdiction to consider if W.M.O. 3.06.030.A. violates the Fourteenth Amendment right to procedural due process?*

Whether a party has standing is a component of subject matter jurisdiction, which an appellate court may consider on its own motion while exercising unlimited review. *Creecy*, 310 Kan. at 459-60.

When the district court amended its initial order, it sua sponte questioned if our Supreme Court's holding in *Meats*—that the statutory provision requiring drivers seeking administrative review of their driver's license suspensions to pay a $50 fee was unconstitutional for lacking an indigency waiver—meant that W.M.O. 3.06.030.A. was also unconstitutional for lacking an indigency waiver. Indeed, in its amended order, the district court speculated as follows: "Based on the *Meats* decision, it would *appear* that the City's ordinance *may* also be expressly unconstitutional because it does not provide an indigency waiver for the license fee." (Emphasis added.) Thus, in its amended order, the

18

district court never explicitly held that the City's after-hours establishment licensing framework was unconstitutional based on a lack of indigency waiver. Nor did it explicitly state what part of the United States Constitution required the City's after-hours licensing framework to have an indigency waiver.

In addressing the district court's discussion of the *Meats* decision, the City never explicitly takes issue with the district court's errant decision to sua sponte raise an argument in support of Trotter's motion to dismiss. See *Huffmier*, 30 Kan. App. 2d at 1166 (holding that "[i]t is error for a trial court to raise, *sua sponte*, nonjurisdictional issues"). Also, on appeal, neither party recognizes that in its amended order, the district court merely speculated that W.M.O. 3.06.030.A. violated the Fourteenth Amendment's Due Process Clause. Instead, both parties assume that the district court ruled that W.M.O. 3.06.030.A. violated the Fourteenth Amendment's Due Process Clause without ever recognizing the speculative nature of the district court's amended order, which made it akin to an advisory opinion. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016) (holding that "Kansas courts do not issue advisory opinions").

Still, the City does question the district court's reliance on *Meats* because unlike the vehicle driver in *Meats*, Trotter never applied for an after-hours establishment license. In short, the City contends that the district court should have declined to consider if W.M.O. 3.06.030.A. violated the Fourteenth Amendment's Due Process Clause because Trotter's failure to apply for an after-hours establishment license meant that his procedural due process rights were never affected by the City's after-hours establishment licensing framework. And this, in turn, meant that Trotter lacked standing to challenge W.M.O. 3.06.030.A. as expressly contrary to the Fourteenth Amendment's Due Process Clause because *his personal* Fourteenth Amendment due process rights were not implicated by the City's after-hours establishment licensing framework lacking an indigency waiver. As noted, in his supplemental brief, Trotter simply contends that "regardless of how [we] have determined the issue of standing," we have jurisdiction over

19

this issue because the City never argued that he lacked standing to challenge W.M.O. 3.06.030.A. as violating his Fourteenth Amendment due process rights before the district court.

Here, it is readily apparent that even if we were to ignore all the other problems with the district court's decision to sua sponte speculate if W.M.O. 3.06.030.A. violated the Fourteenth Amendment's Due Process Clause, the district court lacked jurisdiction to engage in this speculation. As stressed by the City, because Trotter never applied for an after-hours establishment license, he suffered no cognizable injury based on the City's after-hours establishment licensing framework lacking an indigency waiver for the $400 fee necessary to obtain the annual license. See *Creecy*, 310 Kan. at 461; W.M.O. 3.06.050.A. It therefore follows that the district court lacked jurisdiction to speculate if W.M.O. 3.06.030.A. violated Trotter's or anyone else's due process rights under the Fourteenth Amendment. See *Creecy*, 310 Kan. at 459 (holding that a party must have standing for a court to obtain subject matter jurisdiction). Also, Trotter's contention that this court has jurisdiction to consider this issue simply because the City did not challenge his standing before the district court is entirely unpersuasive for multiple reasons, including because we have the authority to question our own jurisdiction even when the parties fail to recognize a jurisdictional problem either before the district court or on appeal. See *Creecy*, 310 Kan. at 459. As a result, we also lack jurisdiction to consider if the City's after-hours establishment licensing framework violates Trotter's or anyone else's rights under the Fourteenth Amendment. See *McCoin*, 278 Kan. at 468 (holding that if the district court lacked jurisdiction to enter an order, this court also lacks subject matter jurisdiction over the appeal).

So, we hold that the district court lacked jurisdiction to issue any ruling about the Fourteenth Amendment's application to the City's after-hours establishment licensing framework. In turn, to the extent the district court's speculative language constituted a ruling that W.M.O. 3.06.030.A. was unconstitutional for violating the Fourteenth

20

Amendment's Due Process Clause as applied to Trotter or anyone else, this speculative holding is void as a matter of law. Thus, any issues on the Fourteenth Amendment's application to the City's after-hours establishment licensing framework are not properly before us.

> *Do we have jurisdiction to consider the district court's decision to dismiss Trotter's charge for operating an unlicensed entertainment club contrary to W.M.O. 3.30.030.A. based on its ruling that W.M.O. 3.06.030.A. was unconstitutional?*

As previously noted, "[i]t is error for a trial court to raise, *sua sponte*, nonjurisdictional issues." *Huffmier*, 30 Kan. App. 2d at 1166. Kansas appellate courts, in contrast, may sometimes sua sponte raise a previously unraised issue. In particular, appellate courts may sua sponte raise an issue not otherwise addressed by the parties when "consideration of the new issue is necessary to serve the ends of justice or to prevent a denial of fundamental rights." *State v. Puckett*, 230 Kan. 596, 600-01, 640 P.2d 1198 (1982). In such circumstances, appellate courts should also afford the parties "a fair opportunity" to address the newly raised issue. 230 Kan. at 601.

In this case, it is an undisputed fact that Trotter appealed his municipal court conviction for violating W.M.O. 3.06.030.A. and his municipal court conviction for violating W.M.O. 3.30.030.A. to the district court. In his motion to dismiss, although Trotter mentioned W.M.O. 3.30.030.A.—the provision prohibiting the operation of an unlicensed entertainment establishment—he did so only to support his argument that W.M.O. 3.06.030.A. was unconstitutionally vague, unconstitutionally overbroad, and otherwise expressly contrary to the First Amendment right to assemble. Accordingly, in his motion to dismiss, Trotter never argued that his charge for violating W.M.O. 3.30.030.A. should be dismissed because it was unconstitutional. In fact, although Trotter appealed his municipal court conviction for operating an unlicensed entertainment

21

establishment contrary to W.M.O. 3.30.030.A., the record on appeal contains no motions in which Trotter challenged the constitutional validity of W.M.O. 3.30.030.A.

Nevertheless, when the district court granted Trotter's motion to dismiss, it inexplicably dismissed both of Trotter's municipal charges with prejudice based on its determination that W.M.O. 3.06.030.A. was unconstitutional. Because the district court's order never even notes that Trotter's other charge was for operating an unlicensed entertainment establishment contrary to W.M.O. 3.30.030.A., it seems that the district court was simply unaware that Trotter had been charged with two distinct municipal ordinance violations.

At oral arguments, we provided the parties with a fair opportunity to address this apparent problem since neither party had addressed the district court's decision to dismiss Trotter's charge for violating W.M.O. 3.30.030.A. based on W.M.O. 3.06.030.A.'s alleged unconstitutionality in their respective briefs. When given this opportunity, Trotter's counsel suggested that we need not address the district court's decision because the district court's order only addressed the constitutional validity of W.M.O. 3.06.030.A., not W.M.O. 3.30.030.A. Also, although he never explained how the issue had been resolved, Trotter's counsel asserted that this court need not address the district court's decision to dismiss Trotter's W.M.O. 3.30.030.A. charge based on W.M.O. 3.06.030.A.'s alleged unconstitutionality because this clear error had somehow already been resolved.

Yet, outside of this bald assertion, Trotter has not provided us with anything proving that this issue has already been resolved by the district court. Also, there is certainly nothing in the record on appeal indicating that the district court corrected its decision to dismiss Trotter's W.M.O. 3.30.030.A. charge based on W.M.O. 3.06.030.A.'s alleged unconstitutionality. Therefore, we decline to accept this bald assertion.

Most importantly, because the district court unquestionably lacked statutory authority to dismiss Trotter's charge for violating 3.30.030.A., we hold that the dismissal of Trotter's charge for violating W.M.O. 3.30.030.A. was improper. And because we have determined that consideration of this issue is necessary to serve the ends of justice, we exercise our jurisdiction to sua sponte consider the district court's errant dismissal of Trotter's W.M.O. 3.30.030.A. charge based on W.M.O. 3.06.030.A.'s alleged unconstitutionality.

*Did the district court fail to properly analyze (1) if W.M.O. 3.06.030.A. is unconstitutionally overbroad and (2) if W.M.O. 3.06.030.A. expressly violates the First Amendment right to assemble?*

Once again, whether a party has standing is a component of subject matter jurisdiction, which an appellate court may consider on its own motion while exercising unlimited review. *Creecy*, 310 Kan. at 459-60. Similarly, "[w]hether an ordinance violates the Constitution presents a question of law over which an appellate court exercises plenary review." *Trotter*, 58 Kan. 781, Syl. ¶ 2. Also, whether the district court applied the law properly constitutes a question of law over which an appellate court exercises plenary review. *Becker v. Knoll*, 291 Kan. 204, 212, 239 P.3d 830 (2010).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or *the right of the people peaceably to assemble*, and to petition the Government for a redress of grievances." (Emphasis added.) U.S. Const. amend. I. A person may challenge a law as expressly violating a specific right under the First Amendment. At the same time, a person may also challenge a law as being so overbroad as to infringe upon First Amendment rights. Significantly, although the parties and the district court generally state that Trotter challenged W.M.O. 3.06.030.A. as being unconstitutionally overbroad, the overbreadth doctrine is specifically tied to a person's First Amendment rights. See 16 C.J.S. Constitutional Law § 169 (explaining that "[t]he

23

overbreadth doctrine authorizes a litigant to assert the facial unconstitutionality of a statute involving a First Amendment freedom which creates a chilling effect on the freedom of expression"). In any case, different rules guide a court's analysis when considering an argument that a law expressly violates the First Amendment and when considering an argument that a law is so broad that it impermissibly punishes conduct protected under the First Amendment.

To begin with, these challenges have different standing tests. A person has standing to argue that a law expressly violates a specific right under the First Amendment as long as he or she shows that the disputed law affected him or her. See *Williams*, 299 Kan. at 919; *Merryfield v. Sullivan*, 50 Kan. App. 2d 313, 314, 324 P.3d 1132 (2014). Conversely, a person has standing to challenge a law as unconstitutionally overbroad for infringing upon First Amendment rights without ever proving that he or she was personally injured by the disputed law. *Williams*, 299 Kan. at 919. This broader standing test applies when considering overbreadth challenges because the very existence of an unconstitutionally overbroad statute may cause a person not before the court to refrain from engaging in activities protected under the First Amendment. 299 Kan. at 919.

Likewise, the underlying test for determining whether a law expressly violates the First Amendment right to assemble is different from the test for determining if a law is so broad that it infringes upon First Amendment rights. Cases concerning the First Amendment right to assemble usually involve a government limiting people from assembling in a public forum. Nonetheless, people may challenge the application of a licensing framework as a previous restraint on their First Amendment rights of expression. See *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) (holding that a licensing ordinance specifically regulating sexually oriented businesses was an unconstitutional prior restraint on licensees' First Amendment rights); see also *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1988) (holding that "when a licensing statute allegedly vests

24

unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license"). In these cases, courts employ the same rules to analyze the constitutionality of a law regardless of whether a person is challenging a law as violative of his or her First Amendment right to free speech or is challenging the law as violative of his or her First Amendment right to assemble. See *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984). But the specific test a court should use to determine if a law expressly infringes upon people's First Amendment expression rights changes depending on if the disputed law is content-based or content-neutral.

A content-based law is a law that regulates expression that the government purposely adopted because of disagreement with the expression. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). When analyzing content-based laws, a court should uphold the law if the government establishes "that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983); see also *Trotter*, 58 Kan. App. 2d at 790-91 (holding that content-based restrictions will be upheld only "when the government proves they are '"necessary to serve a compelling state interest' and 'narrowly drawn to achieve that interest"'").

Alternatively, a content-neutral law, commonly called a time, place, and manner regulation, is a law that the government adopted for a reason other than because of disagreement with the expression being regulated. Indeed, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. When analyzing a content-neutral law, a court should uphold the law if the government establishes that the law is "narrowly tailored to serve a significant governmental interest"

25

and otherwise "leave[s] open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 293; see also *Trotter*, 58 Kan. App. 2d at 791 (holding that "'time, place, or manner' restrictions, will be upheld if they are 'justified without reference to the content of the regulated speech,' are 'narrowly tailored to serve a significant governmental interest,' and 'leave open ample alternative channels for communication of the information'"). Also, when analyzing a content-neutral law that places a prior restraint upon a person, like obtaining a license before engaging in some form of expression, a court should also consider "whether there are reasonable and definite standards to guide the licensor's determination, as well as a reasonable and meaningful framework to appeal the [government's] decisions." *Trotter*, 58 Kan. App. 2d at 794 (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324, 122 S. Ct. 775, 151 L. Ed. 2d 783 [2002]).

When reviewing a party's argument that a law is unconstitutionally overbroad, however, we employ a different test. Specifically, "[t]he party attacking the constitutionality of a statute on the basis of overbreadth must establish '(1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications.'" *Williams*, 299 Kan. at 920. Yet, "'[w]here conduct and not merely speech is involved, the United States Supreme Court requires that 'the overbreadth of a statute must not only be real, *but substantial as well*, judged in relation to the statute's plainly legitimate sweep.'" (Emphasis added.) 299 Kan. at 920. Courts have determined that such challenges must involve substantial overbreadth because "'[a]lmost every law is potentially applicable to constitutionally protected acts' *and would be unconstitutional if any hypothetical, unconstitutional application was all that had to be established*." (Emphasis added.) 299 Kan. at 920.

Returning our focus to this case once more, we note that the City maintains that Trotter lacked standing before the district court—to challenge W.M.O. 3.06.030.A. as

26

unconstitutionally overbroad or expressly violating the First Amendment right to assemble. The City contends that Trotter never established that his First Amendment constitutional rights were violated by the ordinance. Trotter, however, responds that he has standing to challenge W.M.O. 3.06.030.A. because his argument that W.M.O. 3.06.030.A. is unconstitutionally overbroad is the same as his argument that W.M.O. 3.06.030.A. facially violates the First Amendment's right to assemble. As previously noted, this is not the case because different standing and procedural rules govern whether a law expressly violates the First Amendment right to assemble and whether a law is so broad that it infringes upon a First Amendment right. Thus, in making his arguments, Trotter has wrongly conflated the rules on these two constitutional issues.

Likewise, in making its decision, the district court wrongly conflated the rules on whether a law expressly violates the First Amendment right to assemble and whether a law is so broad that it infringes upon a First Amendment right. Also, most of the district court's analysis why W.M.O. 3.06.030.A. was unconstitutional focused on irrelevant United States Supreme Court caselaw. And the remainder of its analysis focused on hypothetical applications of W.M.O. 3.06.030.A. in a constitutionally impermissible manner.

But the district court's reliance on hypotheticals to rule that W.M.O. 3.06.030.A. was unconstitutional was also clear error. By relying on only hypothetical applications of W.M.O. 3.06.030.A., the district court never truly considered if a significant part of W.M.O. 3.06.030.A.'s target was to limit a person's right to assemble. And it certainly never considered if there was a satisfactory means to sever the unconstitutional application of W.M.O. 3.06.030.A. from its constitutional form as required under the second part of the unconstitutionally overbroad test. Similarly, by relying on only hypothetical applications of W.M.O. 3.06.030.A., the district court never even considered if the licensing framework constituted a content-based or content-neutral law as required

27

under the first part of the test for determining if a law expressly violates the First Amendment right to assemble.

In any case, our Supreme Court has explicitly rejected the hypothetical-based analysis the district court engaged in. Again, a person arguing that a law expressly violates the First Amendment lacks standing to raise a constitutional challenge based on hypothetical applications of the law to third parties. See *Williams*, 299 Kan. at 918 (explaining that in express challenges, "'if there is no constitutional defect in the application of the statute to a litigant, [the litigant] does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations'"). In turn, because Trotter lacked standing to raise a challenge that the City's after-hours establishment licensing framework expressly violated the First Amendment rights of third parties, the district court lacked jurisdiction to rule that W.M.O. 3.06.030.A. violated the First Amendment right to assemble based on its hypothetical applications of W.M.O. 3.06.030.A. to third parties.

Also, a person arguing that a law is unconstitutionally overbroad in a manner that infringes upon a right protected under the First Amendment cannot invalidate the disputed law by relying on only hypothetical applications of the law. See *Williams*, 299 Kan. at 920 (explaining that overbreadth challenges must do more than establish that some constitutionally protected behavior would be prohibited by a law because "'[a]lmost every law' . . . would be unconstitutional if any hypothetical, unconstitutional application was all that had to be established"). But see *State v. Harris*, 311 Kan. 816, 824-25, 467 P.3d 504 (2020) (approving of using hypotheticals in constitutional void-for-vagueness analysis to the extent the hypotheticals established that a law could be subject to different enforcement standards). Thus, the district court necessarily erred when it ruled that W.M.O. 3.06.030.A. was unconstitutionally overbroad contrary to the First Amendment by relying on solely hypothetical applications.

*Conclusion*

Thus, to summarize, we lack jurisdiction to consider the district court's ruling that Trotter lacked standing to challenge W.M.O. 3.06.030.A. as unconstitutionally vague because Trotter has not cross-appealed this issue. Because Trotter never applied for an after-hours establishment license, we—like the district court below—also lack jurisdiction to consider (1) whether W.M.O. 3.06.030.A. expressly violates the Fourth Amendment's right against unreasonable searches, (2) whether W.M.O. 3.06.030.A. expressly violates the Fourteenth Amendment's Due Process Clause, and (3) whether W.M.O. 3.06.030.A. expressly violates the First Amendment's right to assemble. As a result, we have jurisdiction to consider only (1) whether the district court erred by dismissing Trotter's charge for violating W.M.O. 3.30.030.A. based on W.M.O. 3.06.030.A.'s alleged unconstitutionality and (2) whether the district court erred by ruling that W.M.O. 3.06.030.A. was unconstitutionally overbroad.

Because it is readily apparent that the district court erred when it dismissed Trotter's charge for violating W.M.O. 3.30.030.A. based on W.M.O. 3.06.030.A.'s alleged unconstitutionality, however, we hold that the district court erred as a matter of law when it dismissed Trotter's charge for violating W.M.O. 3.30.030.A. And for this reason, we decline to address this issue further. Instead, the remainder of our analysis will focus on whether the district court erred when it dismissed Trotter's charge for violating W.M.O. 3.06.030.A. as unconstitutionally overbroad contrary to the First Amendment's expression rights.

*Is Wichita Municipal Ordinance 3.06.030.A. unconstitutional?*

Once again, the City contends that the district court erred by granting Trotter's motion to dismiss because its after-hours establishment licensing framework is not unconstitutionally overbroad. Trotter counters that W.M.O. 3.06.030.A.'s plain language proves that the City's after-hours establishment licensing framework is unconstitutionally

29

overbroad because it "prohibits all gathering" that "occurs on a regular basis without a license" between midnight and 6 a.m.

*A review of the City's after-hours establishment licensing framework.*

As previously noted, W.M.O. 3.06.030.A. states: "Except as provided in 3.06.030 subsection B., it is unlawful for any person . . . to own, lease, manage, maintain or operate an after-hours establishment without first obtaining a license and paying all fees as required by this chapter, and complying with all other applicable provisions of this code." Meanwhile, W.M.O. 3.06.030.B. states:

> "No separate license shall be required under this chapter for a business licensed by the State of Kansas or City of Wichita, including but not limited to: entertainment establishment, drinking establishment, drinking establishment restaurant, licensed community event, licensed temporary entertainment district, or sexually oriented businesses."

Thus, under the City's after-hours establishment licensing framework, unless a person has already licensed his or her establishment as one of the listed exempted establishments, any person operating an after-hours establishment must obtain a license to legally operate it. A person who violates W.M.O. 3.06.030.A. must "be punished by a fine of not less than $1,000.00 and nor more than $2,500 and up to one year imprisonment." W.M.O. 3.06.180.

W.M.O. 3.06.020, the definitional provision of the City's after-hours establishment licensing framework, provides additional clarity on what sort of establishment would fall under W.M.O. 3.06.030.A.'s licensing requirement. This provision defines "after-hours establishment" as follows:

"'After-hours establishment' means any venue for a series of events or ongoing activity or business, occurring alone or as part of another business, to which the public is invited or allowed which is open anytime between midnight and 6:00 a.m., where individuals gather and is not otherwise licensed for the sale of alcoholic beverages or cereal malt beverages or otherwise licensed by the City of Wichita or state of Kansas for a business at that location. This term shall not include hospitals, hotels, motels or other boarding houses nor is it intended to apply to private homes where specifically invited guests gather." W.M.O. 3.06.020.

Also, the definition of "after-hours establishment" further states:

"A combination of two or more of the following factors is prima facie evidence that an establishment is an 'after-hours establishment':
1) Playing of music either recorded or live;
2) Entertainment such as trivia or games;
3) Sporting events in person or broadcasted on screens;
4) Crowds in excess of 20 people;
5) Alcoholic beverages present;
6) Food by an unlicensed vendor offered for purchase or as a benefit of paid entry;
7) Entry allowed only upon payment of a fee or membership;
8) Establishment monitored by security guards;
9) Advertisements or notifications on social media or by other means that invite the public to attend or participate in functions or activities located on the premises of such establishment."

As a result, the definition of "after-hours establishment" includes a nonexhaustive list of factors, which if two are present, proves a venue constitutes an after-hours establishment. Because this is a nonexhaustive list, however, engaging in other unlisted activity after-hours may render a venue an after-hours establishment. In turn, under the City's after-hours establishment licensing framework, an after-hours establishment is a venue that does the following: (1) hosts recurring events between midnight and 6 a.m.,

31

(2) allows the public to gather at these recurring events, and (3) is not otherwise excluded from having a license because (A) the venue is a hospital, hotel, motel, boarding house, or private home, or (B) the venue already holds a license for an entertainment establishment, drinking establishment, drinking establishment restaurant, licensed community event, licensed temporary entertainment district, or sexually oriented business.

As for the stated purpose of the City's after-hours establishment licensing framework, W.M.O. 3.06.010 explains its purpose. In its entirety, W.M.O. 3.06.010 states:

> "The City of Wichita finds that some after-hours establishments within the city contribute to public intoxication, noise, disorderly conduct, assaults, violent crime and other similar problems connected primarily with the routine congregation of persons around such after-hours establishments, especially those which are managed without adequate security and attention to preventing these problems.
> "The City of Wichita finds that a significant amount of police resources are being expended to address safety issues at after-hours establishments and safety risks are abundant when City personnel are not allowed to enter the facility for safety checks on locked doors and fire suppression devices. The purpose of this Chapter is to regulate the operation of all after-hours establishments so as to minimize the negative effects and to preserve the public safety, health and welfare."

As a result, the City's stated purpose for its after-hours establishment licensing framework can be summarized as minimizing the safety and nuisance issues associated with after-hours establishments.

In addition to defining what constitutes an after-hours establishment and outlining the purpose of requiring venues to hold after-hours establishment licenses, the City's

after-hours licensing framework fully outlines the licensing application process, the licensing suspension and revocation process, and the licensing appeal process.

To obtain an after-hours establishment license, a person must submit a license application in accordance with W.M.O. 3.06.040 and pay an annual fee of $400. W.M.O. 3.06.050.A. Highly summarized, W.M.O. 3.06.040 requires an applicant to include information relating to the following: (1) information related to his or her identity; (2) information related to the identity of the owners, managers, and operators of the proposed after-hours establishment; (3) information related to the general operation of the after-hours establishment, that is, location and business hours; (4) information related to the safe operation of the after-hours establishment; and (5) a "description of the nature of the activity that will take place at the after-hours establishment." W.M.O. 3.06.040.A.; W.M.O. 3.06.040.B. As to the safety information the applicant must provide, the applicant is required to submit "[a] plan to ensure that adequate traffic control, crowd protection and security will be maintained and that underage patrons will not be admitted to the establishment" as well as "[a]n emergency management plan." W.M.O. 3.06.040.B.4.; W.M.O. 3.06.040.B.5.

If the applicant fails to provide this information, the City will deny the after-hours establishment license application. W.M.O. 3.06.040.C. The City will deny the application for other reasons as well, including the applicant's previous commission of certain crimes, the applicant's proposed safety measures being inadequate, and the applicant's venue violating the City's public safety codes. W.M.O. 3.06.040.C. Also, if the applicant successfully obtains the after-hours establishment license, the City may suspend or revoke the after-hours establishment license for several reasons, including if the licensee has not imposed adequate safety measures, if the after-hours establishment venue has become a nuisance, and if the "conduct by disorderly patrons reaches a magnitude that presents an immediate threat to the public safety and well-being of the patrons and the

general public in the vicinity of the establishment." W.M.O. 3.06.060.A.; W.M.O. 3.06.070.A.

Yet, if the City denies an application for an after-hours establishment license, or if the City suspends or revokes a licensee's after-hours establishment license, the applicant or licensee may appeal the City's decision in accordance with W.M.O. 3.06.080. In short, this provision states that applicants or licensees may appeal the City's adverse after-hours establishment licensing decisions by filing written notice with the City that they intend to appeal within 10 business days of the City's adverse decision. W.M.O. 3.06.080.A. This provision also states that if the applicants or licensees disagree with the result of their appeal to the City, they can further appeal the City's decision to the Sedgwick County District Court. W.M.O. 3.06.080.E.

Thus, there are three important takeaways from the City's after-hours establishment licensing framework: First, a venue that constitutes an after-hours establishment must have an after-hours establishment license before it can legally operate. Second, the City's licensing requirements do not apply to all establishments. Instead, unless one of the several listed exceptions apply, the City's after-hours establishment licensing requirements are triggered when a venue hosts recurring events between midnight and 6 a.m. where the public can gather. Third, although the City's after-hours licensing framework applies generally to venues open for recurring public gatherings between midnight and 6 a.m., nothing within the City's after-hours establishment licensing framework allows the City to deny, suspend, or revoke a license based on what type of expression occurs at the venue. Stated another way, nothing within the City's after-hours establishment licensing framework allows the City to deny, suspend, or revoke a license because of the beliefs of the person operating the venue or because the expressions that may take place inside of the venue.

34

With this overview of the City's after-hours establishment licensing framework in mind, we will now consider the parties' underlying dispute on whether W.M.O. 3.06.030.A. is unconstitutionally overbroad in a manner that infringes on the First Amendment's right to assemble.

*W.M.O. 3.06.030.A. is not unconstitutionally overbroad.*

Although the City—as the appellant—carries the burden to establish the district court erred on appeal, before the district court, Trotter—as the party alleging that W.M.O. 3.06.030.A. was unconstitutional—carried the burden of proof. See *Trotter*, 58 Kan. App. 2d 781, Syl. ¶ 1 (holding that "[t]he party asserting a constitutional claim must prove the law clearly violates the Constitution"). As a result, before the district court, Trotter needed to prove two things to establish his argument that W.M.O. 3.06.030.A. was unconstitutionally overbroad in a manner that infringed upon the First Amendment right to assemble:  (1) that prohibition of assemblies is a significant part of W.M.O. 3.06.030.A.'s target and (2) that there exists no satisfactory method of severing W.M.O. 3.06.030.A.'s constitutional form from its unconstitutional applications. See *Williams*, 299 Kan. at 920.

To establish the preceding, Trotter needed to prove that W.M.O. 3.06.030.A. was unconstitutionally overbroad under its common-sense interpretation. See *Williams*, 299 Kan. at 921 (holding that "'courts will not give strained meanings to legislative language through a process of imaginative hypothesizing; a common-sense interpretation of the statute is the guiding principle'"). And as previously explained, under the first part of the overbreadth doctrine test, Trotter had to "do more than imagine a conceivable activity that would be constitutionally protected but would run afoul of the aggravated trafficking statute because '[a]lmost every law is potentially applicable to constitutionally protected acts' and would be unconstitutional if any hypothetical, unconstitutional application was all that had to be established." 299 Kan. at 920. Instead, because Trotter specifically

35

alleged that W.M.O. 3.06.030.A.'s after-hours licensing requirement prohibited him and others from exercising their First Amendment right to assemble, under the first part of the overbreadth doctrine test, he needed to also establish that W.M.O. 3.06.030.A.'s overbreadth was "not only . . . real, but substantial as well, [when] judged in relation to the statute's plainly legitimate sweep.'" 299 Kan. at 920 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 [1973]).

Previously, the United States Supreme Court has explained that the party making a facial challenge to a law's constitutional validity under the overbreadth doctrine must show that the disputed law is substantially overbroad because application of the overbreadth doctrine should be done "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. Thus, "'there must be *a realistic danger* that the statute itself will *significantly compromise* recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.'" (Emphasis added.) *Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S. Ct. 2568, 96 L. Ed. 2d 500 (1987). In line with this precedent, both the First and Sixth Circuits of the United States Court of Appeals have rejected challenges to laws that specifically prohibited persons from operating certain establishments during certain hours of the day.

For instance, in *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 734, 748 (1st Cir. 1995), the First Circuit rejected a movie theater licensee's overbreadth challenge, holding that the following law was not so broad as to violate the First Amendment: "No holder of an entertainment license for theatrical exhibition, public show, public amusement, concert, dance or exhibition . . . shall conduct business between the hours of 12 midnight and 6:00 a.m." Although the licensee argued that this law resulted in banning "all licensed entertainment" contrary to the First Amendment, the First Circuit disagreed because (1) the law was rationally related to the government's stated purpose of minimizing safety and nuisance issues and (2) the law seemingly harmed nobody but the licensee. 43 F.3d at 748. Then, based on the preceding, the First

Circuit held that the licensee had "failed to demonstrate that [the disputed law was] overbroad, let alone substantially so." 43 F.3d at 748.

Likewise, the Sixth Circuit, in *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 438, 441 (6th Cir. 1998), rejected an adult-business store owner's overbreadth challenge, holding a law that prohibited adult-businesses from "opening before 8 a.m. or after midnight Monday through Saturday, and from being open at all on Sundays" was not so broad as to violate the First Amendment. There, the Sixth Circuit explained that it was reversing the district court, which had ruled the law was unconstitutionally overbroad in favor of the adult-business store owner, because the mere possibility that the law may regulate some constitutionally protected expression was an insufficient reason to rule that the law was unconstitutionally overbroad. 137 F.3d at 441.

So this authority from the First and Sixth Circuits supports that a government may place an outright ban on certain establishments being open during some portion of the day without violating protected expression rights under the First Amendment. Indeed, the First Circuit's decision in *National Amusements, Inc.* strongly supports that a government may require a person to comply with a law limiting his or her establishment's hours of operation as part of a licensing requirement. As a result, this authority from the First and Sixth Circuits makes a telling point that a law—requiring a person to obtain a license to operate an establishment during certain hours of the day—would not impermissibly infringe on that person's First Amendment expression rights as long as the law otherwise met the overbreadth doctrine's test for constitutionality.

In its appellant's brief, the City argues that neither W.M.O. 3.06.030.A., nor its overall after-hours establishment licensing framework, is unconstitutionally overbroad because the licensing framework "does not seek to regulate protected activity" and does not "make constitutionally protected conduct illegal." In making this argument, the City stresses that the stated purpose of its licensing framework is to reduce the safety and

nuisance concerns associated with after-hours establishments. In making this argument, the City also takes issue with the district court's reliance on hypothetical applications of W.M.O. 3.06.030.A. It contends that "[n]one of the various factual scenarios cited by the trial court establish that the ordinance is overly broad" because the fact that the licensing framework could be applied unconstitutionally does not mean that it is unconstitutional.

In his appellee's brief, Trotter responds that W.M.O. 3.06.030.A. is unconstitutionally overbroad "because it regulates and prohibits (without a license) protected activity." According to Trotter, the City's purpose for enacting W.M.O. 3.06.030.A. was to "regulate[] all gathering between 12:00 a.m. and 6:00 a.m." To support this argument, Trotter points to the district court's hypothetical applications of W.M.O. 3.06.030.A. to private homes and dormitories. Trotter seemingly believes that because W.M.O. 3.06.030.A. could be applied to recurring events held between midnight and 6 a.m. at these locations, W.M.O. 3.06.030.A. is unconstitutionally overbroad. Also, Trotter emphasizes the definition of "after-hours establishment" includes a nonexhaustive list of factors, which if two are present, proves a venue constitutes an after-hours establishment. Trotter apparently believes that because the definition includes a nonexhaustive list, the City's after-hours licensing framework lacks sufficient guidance on what makes a venue an after-hours establishment.

Yet, the first step of our analysis in overbreadth challenges is to determine whether the constitutionally protected activity is a significant part of the law's target. *Williams*, 299 Kan. at 920. Both before the district court and on appeal, Trotter's arguments have always assumed that assembling is a significant part of W.M.O. 3.06.030.A.'s target simply because the after-hours establishment definitional provision—W.M.O. 3.06.020 —states that an after-hours establishment is a venue where "individuals gather." But plainly, regulating gatherings is not the stated purpose of the City's after-hours establishment licensing framework. Instead, under W.M.O. 3.06.010, the City's stated

purpose for requiring after-hours establishment licenses is to minimize the safety and nuisance risks associated with after-hours establishments.

Also, Trotter's argument that the target of W.M.O. 3.06.030.A. is to prohibit all gatherings between midnight and 6 a.m. ignores that there are numerous exceptions to W.M.O. 3.06.030.A. To begin with, the definition of after-hours establishment explicitly states that "hospitals, hotels, motels or other boarding houses" are not after-hours establishments. As a result, the plain language of the City's after-hours establishment licensing framework proves that it does not apply to venues providing lodging as a business. Next, the definition of after-hours establishment states that the City's after-hours establishment licensing framework is not "intended to apply to private homes where specifically invited guests gather." Thus, the City's after-hours establishment licensing framework explicitly states that it is not the City's intent to apply the framework to private homes. And more significantly, because the City's after-hours establishment licensing framework is not intended to apply to people who regularly host invited guests in their private homes, it is readily apparent that the framework does not apply in circumstances of *private gatherings*. Conversely, it is the fact that members of *the public* can enter a venue, like a private home, that may result in that venue being deemed an after-hours establishment.

Of note, most of the district court's hypotheticals, which Trotter has adopted, ignore this key fact. Once more, the district court determined that W.M.O. 3.06.030.A. was unconstitutionally overbroad because it concluded the City's after-hours establishment licensing framework made it a crime for persons to host recurring gatherings in their private homes between midnight and 6 a.m. if such persons (1) lived in nonresidential zones, (2) lived in dorms, (3) were under the age of 21, or (4) engaged in commercial activity inside their private homes. But none of these hypothetical applications of W.M.O. 3.06.030.A. noted that the City's after-hours establishment licensing framework would apply to such persons only if they were hosting recurring

39

gatherings in their private homes between midnight and 6 a.m. *to which the public was invited*. Stated another way, the district court's hypotheticals ignored that as long as such persons held a private gathering for "specifically invited guests," their recurrent early-morning gatherings would not constitute an after-hours establishment under W.M.O. 3.06.020's definition of after-hours establishment. As a result, the district court's hypothetical applications of W.M.O. 3.06.030.A. fall short of the mark because the district court's hypotheticals would apply only if such persons started hosting recurrent early-morning gatherings that the public could attend.

Of further note, although the district court implied that private homes in nonresidentially zoned areas are excluded from the list of venues that are excepted from the City's after-hours establishment licensing framework, this is not true. It seems that the district court ruled that private homes in nonresidentially zoned areas may come under the City's after-hours establishment licensing framework by hosting recuring gatherings between midnight and 6 a.m. in their private homes because W.M.O. 3.06.020 defines "private home" as "a building or structure used solely as a private residence where no other commercial or entertainment activities occur or may occur. The term is meant to encompass private citizens gathering with invited guests *in their own residentially zoned home*." (Emphasis added.) As an initial point, neither the district court nor Trotter has explained if the City's zoning ordinances even allow people to have a private home in a nonresidentially zoned area. The very name "nonresidential" implies persons would not ordinarily have private homes in such districts. It thus follows that neither the district court nor Trotter have shown that there is a realistic danger that W.M.O. 3.06.030.A. would significantly compromise persons living in a nonresidentially zoned area from gathering in accordance with their First Amendment right to assemble.

Next, although the district court's dismissal order did not make any rulings on churches, Trotter has consistently argued that W.M.O. 3.06.030.A. is unconstitutionally overbroad because it would prohibit a church from holding midnight mass without first

40

obtaining an after-hours establishment license. He stresses that under W.M.O. 3.06.020's definition of after-hours establishment, the presence of more than 20 members of the public and communion wine at a "weekly midnight mass" would render a church an after-hours establishment. But the term "midnight mass" traditionally refers to a singular church service that a church holds on Christmas Eve. Therefore, a singular midnight mass at Christmastime would not fall under the City's after-hours establishment licensing framework. Also, even if a church was holding weekly midnight masses, or some other weekly midnight service, Trotter's argument ignores that he must establish that W.M.O. 3.06.030.A.'s overbreadth is not only real but substantial enough that there is a realistic danger that the law will significantly compromise the First Amendment rights of others. See *Airport Comm'rs*, 482 U.S. at 574; *Williams*, 299 Kan. at 920. Quite clearly, under the assumption such weekly church services occur, it is readily apparent that the possibility such weekly church services fall under the technical definition of an after-hours establishment does not prove that W.M.O. 3.06.030.A. is so substantially overbroad that there is a realistic danger that it would be applied in a manner to violate those midnight masses attendees' First Amendment rights.

We note that "[t]he freedom to hold religious beliefs and opinions is absolute. . . . However, the freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions." *Braunfeld v. Brown*, 366 U.S. 599, 603, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961). Thus, one's religious beliefs may not be a defense against a prosecution for a crime that may be prohibited under a government's police power. *Reynolds v. United States*, 98 U.S. 145, 166-67, 8 Otto 145, 25 L. Ed. 244 (1878) (Religious belief is no defense to a polygamy prosecution.); *Trotter*, 58 Kan. App. 2d at 799 ("'Municipalities have broad police powers to enact ordinances regulating or restricting certain activities to promote the health, safety, and welfare of the public.'").

As for Trotter's emphasis on the nonexhaustive list of factors included in W.M.O. 3.06.020's definition of after-hours establishment, the fact that W.M.O. 3.06.020's

definition of after-hours establishment includes a nonexhaustive list of factors does not necessitate a ruling that W.M.O. 3.06.030.A. is unconstitutionally overbroad. To the contrary, the City undoubtedly included the nonexhaustive list of factors within W.M.O. 3.06.020's definition of after-hours establishment because it was trying to provide guidance under what circumstances the after-hours establishment licensing framework would apply. And regardless of this, in *Trotter*, we rejected a similar argument by Trotter. There, he asserted that W.M.O. 3.30.020's definition of "entertainment," which included a nonexhaustive list of factors that if present meant a venue constituted an entertainment establishment, created confusion because it meant a person may need an entertainment establishment license in a variety of situations. The *Trotter* court, though, ultimately rejected this argument for the following reasons: (1) because the City's entertainment establishment licensing framework, though broad, was "not unbounded"; (2) because the City's licensing framework did not prohibit persons from engaging in expressive activity; and (3) because the City's after-hours establishment licensing framework does not regulate expression inside the entertainment establishment. 58 Kan. App. 2d at 798.

Trotter's current overbreadth challenge is very similar to his overbreadth challenge in *Trotter*. Like the City's entertainment establishment licensing framework at issue in *Trotter*, the City's after-hours establishment licensing framework at issue in this case, though broad, is not unbounded. Next, like his overbreadth argument in *Trotter*, Trotter's current argument that W.M.O. 3.06.030.A. is unconstitutionally overbroad ignores that a person's First Amendment right to assemble is not absolute. See *Perry*, 460 U.S. at 45-46. And like his overbreadth argument in *Trotter*, Trotter's current argument that W.M.O. 3.06.030.A. is unconstitutionally overbroad ignores that although the City requires a license to operate a venue that hosts recurring public gatherings between midnight and 6 a.m., the City's after-hours establishment licensing framework does not ban other avenues of expression. Specifically, it does not prohibit Trotter or anyone else from peaceably assembling in areas traditionally designated as public forums during that same timeframe. See *Perry*, 460 U.S. at 45 (discussing the type of venues that constitute a public forum).

42

Nor does it allow the City to deny an after-hours establishment license application based on any expressive conduct that Trotter and his patrons intended to engage in at the after-hours establishment. Thus, the fact that W.M.O. 3.06.020's after-hours establishment definition includes a nonexhaustive list of factors, which if two are present, proves a venue constitutes an after-hours establishment, does not mean W.M.O. 3.06.030.A. is unconstitutionally overbroad.

In summary, under the first part of our test in determining if W.M.O. 3.06.030.A. is unconstitutionally overbroad, we must consider if a significant part of W.M.O. 3.06.030.A.'s target was to infringe upon a person's right to assemble. But the City has showed that Trotter never met his burden under the first part of this test before the district court. As previously noted, Trotter has repeatedly alleged that W.M.O. 3.06.030.A. is unconstitutionally overbroad. But neither his nor the district court's hypothetical applications of W.M.O. 3.06.030.A. established that W.M.O. 3.06.030.A. created a realistic danger of significantly compromising Wichitans' First Amendment right to assemble, or any other expressive right, as required to show that a significant part of W.M.O. 3.06.030.A.'s target was to infringe upon people's First Amendment rights. Thus, the district court erred when it granted Trotter's motion to dismiss based on its ruling that W.M.O. 3.06.030.A. was unconstitutionally overbroad. Because the district court erred in granting Trotter's dismissal motion on this basis, this was an error of law and we reverse and remand for further proceedings consistent with this opinion.

*Conclusion*

The advantage of requiring licenses here was to give the City and the public authorities (law enforcement, fire, and emergency medical services) notice in advance so as to afford them an opportunity for proper public safety. Indeed, W.M.O. 3.06.010 states the following:

"The City of Wichita finds that some after-hours establishments within the city contribute to public intoxication, noise, disorderly conduct, assaults, violent crime and other similar problems connected primarily with the routine congregation of persons around such after-hours establishments, especially those which are managed without adequate security and attention to preventing these problems."

The City's stated purpose for requiring after-hours establishment licenses was to minimize the safety and nuisance risks associated with after-hours establishments. Also, W.M.O. 3.06.030.A. and W.M.O. 3.30.030.A. do not vest the City with arbitrary power or unfettered discretion.

In conclusion, because an application of the law governing whether the language in a rule is so broad as to violate First Amendment expression rights definitively establishes that W.M.O. 3.06.030.A. is not unconstitutionally overbroad, the district court erred when it ruled otherwise. And because there was no basis for the district court to grant Trotter's motion to dismiss, the district court also erred when it dismissed Trotter's charges for violating W.M.O. 3.06.030.A. in operating an unlicensed after-hours establishment and for violating W.M.O. 3.30.030.A. in operating an unlicensed entertainment establishment.

Based on the preceding, as well as the fact that the district court lacked jurisdiction to rule that W.M.O. 3.06.030.A. facially violated (1) the Fourth Amendment's right against unreasonable searches, (2) the Fourteenth Amendment's Due Process Clause, and (3) the First Amendment's right to assemble, we reverse the district court's order dismissing Trotter's charges for violating W.M.O. 3.06.030.A. in operating an unlicensed after-hours establishment and for violating W.M.O. 3.30.030.A. in operating an unlicensed entertainment establishment. Because Trotter's appeals to the district court from the municipal court specifically requested a jury trial, we further remand Trotter's now-consolidated appeals to the district court for a jury trial.

44

The district court's dismissal order is reversed, and this case is remanded for a jury trial on both Trotter's charges for violation of W.M.O. 3.06.030.A. and for violation of W.M.O. 3.30.030.A.

Reversed and remanded with directions.