IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,007

CITY OF WICHITA,
*Appellant*,

v.

ARLANDO TROTTER,
*Appellee*.

SYLLABUS BY THE COURT

1.

A party challenging a law as overbroad under the First Amendment need not establish a personal injury arising from that law.

2.

Fourth Amendment rights are personal, and defendants may not vicariously assert them.

3.

The First Amendment overbreadth doctrine may be implicated when a criminal statute makes conduct punishable, which under some circumstances is constitutionally protected from criminal sanctions.

4.

Where a potentially overbroad statute regulates conduct, and not merely speech, the overbreadth must not only be real, but substantial as well, judged in relation to the

statute's plainly legitimate sweep. The party challenging the law bears the burden of showing (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications.

5.

Whether a court may sever an unconstitutional provision from a statute or ordinance and leave the remainder in force and effect depends on the intent of the governing body that drafted it. A court may only sever an unconstitutional portion of an ordinance if, from examination of the ordinance, the court finds that (1) the act would have been passed without the objectionable portion, and (2) the ordinance would operate effectively to carry out the intention of the governing body that passed it with such portion stricken.

6.

When an appellate court raises a new issue sua sponte, counsel for all parties should be afforded a fair opportunity to brief the new issue and present their positions to the appellate court before the issue is finally determined.

7.

When a party challenges a court's error of law, an appellate court's review of that error is unlimited.

Review of the judgment of the Court of Appeals in 60 Kan. App. 2d 339, 494 P.3d 178 (2021), from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed August 12, 2022. Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Jan M. Jarman*, assistant city attorney, argued the cause and was on the briefs for appellant.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

WILSON, J.: Arlando Trotter appeals the decision of the Court of Appeals panel reversing the district court's dismissal of his two charges, which arose under Wichita Municipal Ordinances 3.06.030.A. and 3.30.030.A. Because we agree with the district court that W.M.O. 3.06.030.A. is overbroad and conclude that the panel erred by sua sponte reversing the district court's dismissal of Trotter's other charge, we affirm the district court and affirm in part and reverse in part the panel.

## FACTS AND PROCEDURAL BACKGROUND

The procedural history of this case presents us with a limited factual record. In two separate municipal court cases, the City of Wichita charged Trotter with one violation each of W.M.O. 3.06.030.A. ("fail to file license application for after-hours") and W.M.O. 3.30.030.A. ("teen club/entertainment"). We know nearly nothing about the charges or proceedings that occurred before the Wichita Municipal Court. At any rate, after the municipal court found Trotter guilty in both cases, Trotter appealed to the district court, characterizing his convictions as arising under city ordinances "0306030A" and "0330030A." As a practical matter, Trotter's appeal had the effect of conditionally vacating his municipal convictions. *City of Salina v. Amador*, 279 Kan. 266, 274, 106 P.3d 1139 (2005).

3

On appeal before the district court, Trotter moved to consolidate both cases into one. He also moved to dismiss his charges, challenging the constitutionality of W.M.O. 3.06.030.A. The district court agreed, finding W.M.O. 3.06.030.A. unconstitutionally overbroad because it intrudes upon several "examples of Constitutionally protected behaviors." The district court then dismissed both charges, thus fully vacating Trotter's municipal convictions. *Amador*, 279 Kan. at 274.

The City appealed. After rejecting Trotter's other constitutional claims, a panel of the Court of Appeals reversed the district court's conclusion that W.M.O. 3.06.030.A. was unconstitutionally overbroad. The panel also sua sponte reversed the district court's dismissal of the charge arising under W.M.O. 3.30.030.A., commenting that its "consideration of this issue is necessary to serve the ends of justice." *City of Wichita v. Trotter*, 60 Kan. App. 2d 339, 357, 494 P.3d 178 (2021).

Trotter moved for rehearing or modification, which the Court of Appeals denied. He then petitioned this court for review, which we granted.

ANALYSIS

Trotter challenges several aspects of the panel's decision. We find merit in his constitutional overbreadth argument and in his claim that the panel erred in reversing the district court's dismissal of his charge under W.M.O. 3.30.030.A., albeit not for the reasons he suggests. We deny Trotter's remaining claims as moot.

*W.M.O. 3.06.030.A. is unconstitutionally overbroad.*

Trotter disputes the panel's conclusions that W.M.O. 3.06.030.A. is not unconstitutionally overbroad and that it lacked jurisdiction to consider his arguments about the ordinance's alleged Fourth Amendment implications for overbreadth purposes. He has abandoned all other constitutional arguments.

The existence of appellate jurisdiction presents a question of law subject to unlimited review. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021). The same is true of a challenge to the constitutionality of a statute or ordinance. *State v. Boettger*, 310 Kan. 800, 803, 450 P.3d 805 (2019); *City of Wichita v. Edwards*, 23 Kan. App. 2d 962, 964, 939 P.2d 942 (1997).

*Standing*

When First Amendment rights are affected, a party challenging a law as overbroad need not establish a personal injury arising from that law. *Williams*, 299 Kan. at 919 ("The general rule [requiring standing] does not apply . . . when a litigant brings an overbreadth challenge that seeks to protect First Amendment rights, even those of third parties."). Cf. *Wenzel v. Bankhead*, 351 F. Supp. 2d 1316, 1323 (N.D. Fla. 2004) (distinguishing overbreadth claims from Fourth Amendment claims). Thus, the panel correctly determined that Trotter has standing to raise an overbreadth claim under the First Amendment.

The panel also correctly concluded that Trotter lacks standing to levy a Fourth Amendment challenge against W.M.O. 3.06.030.A. True, the panel approached this consideration from the perspective of a *direct* Fourth Amendment challenge rather than

5

Trotter's true argument, which contends that W.M.O. 3.06.030.A. "is unconstitutionally overbroad because it infringes on the First Amendment when it requires one to waive her Fourth Amendment Rights in order to receive a license (permission) to exercise her First Amendment Rights." But we consider this a distinction without a difference as to standing. Trotter cites no authority extending the third-party standing approach beyond the domain of the First Amendment, and we have consistently held that Fourth Amendment rights "'are personal, and defendants may not vicariously assert them.'" *State v. Scheuerman*, 314 Kan. 583, 593, 502 P.3d 502 (2022). Thus we affirm the panel's rejection of Trotter's claim as to the Fourth Amendment implications of the ordinance.

*Constitutional principles*

We turn now to the merits of Trotter's First Amendment overbreadth claim. Under the First Amendment to the United States Constitution, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Trotter's claim of overbreadth focuses on W.M.O. 3.06.030.A.'s impact on the First Amendment right of assembly. See *De Jonge v. State of Oregon*, 299 U.S. 353, 364, 57 S. Ct. 255, 81 L. Ed. 278 (1937) (incorporating the First Amendment right to assemble to the states under the Fourteenth Amendment to the United States Constitution).

All parties agree the ordinance is content neutral. But content neutrality does not immunize an ordinance from overbreadth scrutiny. Cf. *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1148-54 (10th Cir. 2020) (addressing content neutrality of an ordinance as a component of an as-applied challenge and overbreadth separately as a component of a facial challenge).

6

A criminal statute may be unconstitutionally overbroad when it "makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions." *Dissmeyer v. State*, 292 Kan. 37, 43, 249 P.3d 444 (2011). "Where conduct and not merely speech is involved, the United States Supreme Court requires that 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Williams*, 299 Kan. at 920. Thus, because "'[a]lmost every law is potentially applicable to constitutionally protected acts,'" a court will not find a law unconstitutionally overbroad unless the party challenging the law can show "'(1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications.'" *Martens*, 279 Kan. at 253 (quoting *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 6, 13 P.3d 887 [2000]); see also *Boettger*, 310 Kan. at 803 (party challenging the statute bears the burden of establishing constitutional infirmity). Moreover, "[c]riminal statutes must be scrutinized with particular care . . . those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). Still, "[t]he overbreadth doctrine should be employed sparingly and only as a last resort." *Martens*, 279 Kan. at 253.

*The Wichita after-hours establishment licensing scheme*

The challenged ordinance, W.M.O. 3.06.030., provides:

"A.      Except as provided in 3.06.030 subsection B, it is unlawful for any person to either as the owner, principal, officer, agent, servant, responsible person or

7

employee, to own, lease, manage, maintain or operate an after-hours establishment without first obtaining a license and paying all fees as required by this chapter, and complying with all other applicable provisions of this code.

"B.     No separate license shall be required under this chapter for a business licensed by the State of Kansas or City of Wichita, including but not limited to: entertainment establishment, drinking establishment, drinking establishment restaurant, licensed community event, licensed temporary entertainment district, or sexually oriented businesses.

"C.     A license under this section is not transferable to another person or location. A change in ownership shall require the new owner to pay a new application fee and secure a new license."

Several definitions in W.M.O. 3.06.020. establish the ordinance's scope:

"'After-hours establishment' means any venue for a series of events or ongoing activity or business, occurring alone or as part of another business, to which the public is invited or allowed which is open anytime between midnight and 6:00 a.m., where individuals gather and is not otherwise licensed for the sale of alcoholic beverages or cereal malt beverages or otherwise licensed by the City of Wichita or state of Kansas for a business at that location. This term shall not include hospitals, hotels, motels or other boarding houses nor is it intended to apply to private homes where specifically invited guests gather. A combination of two or more of the following factors is prima facie evidence that an establishment is an 'after-hours establishment':

"(1) Playing of music either recorded or live;

"(2) Entertainment such as trivia or games;

"(3) Sporting events in person or broadcasted on screens;

8

"(4) Crowds in excess of 20 people;

"(5) Alcoholic beverages present;

"(6) Food by an unlicensed vendor offered for purchase or as a benefit of paid entry;

"(7) Entry allowed only upon payment of a fee or membership;

"(8) Establishment monitored by security guards;

"(9) Advertisements or notifications on social media or by other means that invite the public to attend or participate in functions or activities located on the premises of such establishment.

. . . .

"'Games' mean an activity engaged in for diversion or amusement.

. . . .

"'Music' as used in this Chapter shall apply to live musicians, disc jockeys, and all music amplified through speakers or loud enough to be heard outside of the establishment.

. . . .

"'Premises' means any place where an after-hours establishment is operated or maintained and includes all hallways, bathrooms, parking areas, and other adjacent portions of the premises, which are under the control of the licensee or which are utilized by the licensee and are accessible to the public during operating hours.

9

"'Private home' means a building or structure used solely as a private residence where no other commercial or entertainment activities occur or may occur. The term is meant to encompass private citizens gathering with invited guests in their own residentially zoned home.

"'Public' means non-employees and includes invited guests and members of an organization even if that organization is selective in its membership.

"'Trivia' means a quizzing game.

"'Venue' means any interior or exterior area, building, room, lot, or space used as a location for people to gather."

Finally, W.M.O. 3.06.010. sets forth the ordinance's overall purpose:

"The City of Wichita finds that some after-hours establishments within the city contribute to public intoxication, noise, disorderly conduct, assaults, violent crime and other similar problems connected primarily with the routine congregation of persons around such after-hours establishments, especially those which are managed without adequate security and attention to preventing these problems.

"The City of Wichita finds that a significant amount of police resources are being expended to address safety issues at after-hours establishments and safety risks are abundant when City personnel are not allowed to enter the facility for safety checks on locked doors and fire suppression devices. The purpose of this Chapter is to regulate the operation of all after-hours establishments so as to minimize the negative effects and to preserve the public safety, health and welfare."

As the City argues, many of the ordinance's aspects suggest that it was intended to regulate mainly late-night *commercial* activity. Had the ordinance's plain language

limited its applicability to commerce alone, this matter might be settled easily because, "it is irrelevant whether the ordinance has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech." *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

The problem is that nothing in the ordinance's plain language *does* limit it to commercial activity. As it is defined, W.M.O. 3.06.030. requires a license for every "venue" (essentially everywhere but a few places specifically excluded by the ordinance) where the "public" (essentially everyone *except* employees and "specifically invited guests" gathering in "private homes") "is invited or allowed" for a "series of events or ongoing activity or business" that extends to any point between midnight and 6 a.m. The ordinance excludes only (1) other places already licensed by the state or the city, (2) hospitals, (3) hotels, (4) motels, (5) boarding houses, and (6) "private homes where specifically invited guests gather."

The broad reach of the "public" is further shown by the failure to limit the term "organization." While an individual's specifically invited guests fall outside the ordinance's ambit (but only if they gather solely inside the individual's home and that home is not otherwise disqualified), the same is not true for an invited "organization." With no definition of "organization," the attendees of a monthly book club meeting or a weekly gathering of the Future Farmers of America, for example, would qualify as "the public" under the ordinance's plain language. But we need not resort to such hypothetical applications to divine the ordinance's scope—any regular gatherings involving an "organization" would require licensing under the ordinance if they extend after midnight or begin before 6 a.m. In the context of other city and state licensing laws, W.M.O.

11

3.06.030. acts as a catchall "everything but the kitchen sink" regulatory scheme that purports to control most activity between midnight and 6 a.m.

While much of the ordinance's scope may be sound, its reach into private homes exceeds its constitutionally tolerable grasp. As defined by W.M.O. 3.06.020., a "private home" is "a building or structure used solely as a private residence where no other commercial or entertainment activities occur or may occur" and applies to "private citizens gathering with invited guests in their own residentially zoned home." Stated another way, the ordinance only excludes gatherings in the *interior* of buildings used *solely* as residences ("where no other commercial or entertainment activities occur or may occur") that sit in *solely* residentially zoned areas. Back yard gatherings, gatherings inside residences used partially for commercial purposes—such as those with home offices—and gatherings inside residences that are not solely in residential zones fall within the ordinance's scope.

Indeed, the City's initial response to Trotter's district court motion to dismiss even admitted that "[i]f a person has a home and a nice metal building out back and they host parties every weekend with music and food, they must have a license." We agree: under the ordinance's plain language, such a gathering would require a license if it lasted past midnight. But we cannot agree that the Constitution permits such an intrusion.

It was here that the panel stumbled. The panel focused on the ordinance's purported limitation to gatherings "to which the public was invited," claiming that "the district court's hypothetical applications of W.M.O. 3.06.030.A. fall short of the mark because the district court's hypotheticals would apply only if such persons started hosting recurrent early-morning gatherings that the public could attend." *Trotter*, 60 Kan. App. 2d at 372-73. But the panel ignored the ordinance's wide definition of "public," as well as

12

other problems with the ordinance's definitions previously referenced. These problems convince us that any limitation on the ordinance's scope created by its "public" requirement is illusory, at best. The few exceptions the ordinance carves out illustrate its default rule:  that nearly all gatherings fall within its reach unless specifically exempted.

Of course, we "'must construe statutes to avoid unreasonable or absurd results.'" *State ex rel. Schmidt v. Kelly*, 309 Kan. 887, 904, 441 P.3d 67 (2019) (quoting *N. Natural Gas Co. v. ONEOK Field Services Co.,* 296 Kan. 906, 918, 296 P.3d 1106 [2013]). But that principle—like other rules of construction—only applies in the presence of ambiguous language. E.g., *Schmidt v. Trademark, Inc.*, 315 Kan. 196, Syl. ¶ 1, 506 P.3d 267 (2022). While the meaning of "organization" may be ambiguous, the City's definition of "private homes" is not. We cannot construe around an ordinance's plain language, much as the City invites us to by, for example, reading a "curtilage" limitation into the ordinance's definitions. As written, W.M.O. 3.06.030. unambiguously regulates a wide range of otherwise lawful activity both inside certain private homes (i.e., those either used partially for "commercial or entertainment activities" or those not situated within residentially zoned areas) and around all private homes (i.e., anywhere outside the building or structure that comprises the home). The only exception to this broad regulatory swath goes to "specifically invited guests" *inside* a residentially zoned private home (used solely as a private home) between the hours of midnight and 6 a.m.

The panel expressed some concern with the zoning aspect of the ordinance, declaring that "[t]he very name 'nonresidential' implies persons would not ordinarily have private homes in such districts" and "[i]t thus follows that neither the district court nor Trotter have shown that there is a realistic danger that W.M.O. 3.06.030.A. would significantly compromise persons living in a nonresidentially zoned area from gathering in accordance with their First Amendment right to assemble." *Trotter,* 60 Kan. App. 2d at

13

373. But we take judicial notice under K.S.A. 60-409(b) of the Wichita-Sedgwick County Unified Zoning Code, which is incorporated by reference in W.M.O. 28.04.010. Article III.B.14, III.B.16, and III.B.19 of that Code, provide for "Limited Commercial District," "General Commercial District," and "Central Business District" zoning. Those sections of the Code permit several residential uses in such zones. While we cannot say how many residences fall under such zones, their very existence dispels the panel's assumption that there is no realistic danger of their regulation here.

While clearly the City has a legitimate governmental interest in the regulation of late-night commercial activity, that interest does not justify regulatory intrusion into non-commercial activity vis-à-vis the right of assembly in or around private homes. Cf. *Konen v. Spice*, 318 F. Supp. 630, 632 (E.D. Wis. 1970) (ordinance prohibiting "all assemblies in any place (except the public ball park) without an advance permit granted by the chief of police" found unconstitutionally overbroad). This is also true of the City's stated purpose in regulating "the operation of all after-hours establishments so as to minimize the negative effects and to preserve the public safety, health and welfare." W.M.O. 3.06.010. Cf. *Occupy Sacramento v. City of Sacramento*, 878 F. Supp. 2d 1110, 1119 (E.D. Cal. 2012) (ordinance restricting gatherings in public parks without a permit between 11 p.m. and 5 a.m. not unconstitutionally overbroad); *Gordon v. Schiro*, 310 F. Supp. 884, 887 (E.D. La. 1970) ("It is beyond the reach of a penal ordinance to prohibit people from merely being on the streets 'habitually' or even at late 'or unusual' hours."). See also *Territory of Hawaii v. Anduha*, 48 F.2d 171, 171-73 (9th Cir. 1931) (statute prohibiting loafing or loitering "upon any public street or highway or in any public place" found unconstitutional: "[T]he right of the territory, or one of its municipalities, to legislate against the obstruction of public streets and highways, whether caused by idlers or others, is not open to question. But a regulation as broad as this is wholly unnecessary for that purpose."). As one case put it:

14

"Although [the Town of] Dedham likely would have created overbreadth concerns had it attempted to ban *all First Amendment activity between 1:00 a.m. and 6:00 a.m.*, it did not take so bold a step. Rather, Dedham chose a safer path by focusing on those activities— *commercial* entertainment—most likely to result in late-night disruptions. [Citation omitted.]" (Emphasis added.) *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 748 (1st Cir. 1995).

As we have noted, nothing in the plain language of the ordinance limits its application solely to commercial endeavors. And while the City here has not attempted to ban *all* gatherings between midnight and 6 a.m., the broad sweep of its regulation captures the lion's share of such activity—including much activity within private homes, residentially zoned or not.

"An ordinance or statute is overbroad when it regulates or prohibits constitutionally protected conduct which should be left to the private domain, that is, conduct which the national, state or local government simply does not have the right to control." *Schiro*, 310 F. Supp. at 886. We have little trouble concluding that this ordinance creates a real and substantial intrusion into the private lives of Wichitans that goes far beyond the scope necessary to further the City's legitimate interests. We do not find W.M.O. 3.06.030.A. overbroad based on unlikely or extreme hypotheticals, but instead based on the ordinance's plain language.

Nor can we sever the ordinance's unconstitutional applications from its constitutional ones. First, we observe that the parties have largely left this prong of the analysis alone. Even the district court "never considered if there was a satisfactory means to sever the unconstitutional application of W.M.O. 3.06.030.A. from its constitutional form as required under the second part of the unconstitutionally overbroad test." *Trotter*,

15

60 Kan. App. 2d at 362. The City now urges us to sever the ordinance in any number of ways, but our authority to do so is limited. We have considered "severing a provision from [an ordinance] if to do so would make the [ordinance] constitutional and the remaining provisions could fulfill the purpose of the [ordinance]." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 913, 179 P.3d 366 (2008). As we have held:

> "'Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that (1) the act would have been passed without the objectionable portion and (2) if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent.'" *Gannon v. State*, 304 Kan. 490, 519, 372 P.3d 1181 (2016) (quoting *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 300, 327 P.2d 836 [1958]).

Granted, the focus of the ordinance is clearly commercial. But the ordinance also casts a wide net over practically all late-night activity by design, as emphasized by the multiple definitional layers that clarify its meaning. As the City's Supplemental Brief claims, "A group gathering overnight on a regular basis may call themselves a church, a political organization, or a private club, but the law applies equally to any group." Consequently, we cannot predict whether the Wichita City Council would have passed the ordinance without the troubling definitions of "private homes" or "public." Instead, we conclude that they cannot be severed without doing violence to the intent of the ordinance.

The district court expressed its opinion in terms of hypotheticals. It need not have done so: under W.M.O. 3.06.030., the regulation of late-night gatherings in Wichita is the rule proven by its few exceptions. We thus affirm the district court's decision to dismiss Trotter's charge under W.M.O. 3.06.030.A. and strike down the ordinance as unconstitutionally overbroad.

*The panel abused its discretion by sua sponte reversing the district court's dismissal of Trotter's remaining charge.*

Before the appeal, the district court perhaps inadvertently dismissed Trotter's second charge (and vacated his municipal conviction on that charge) for violating W.M.O. 3.30.030.A., even though "Trotter never argued that his charge [and consequent municipal conviction] for violating W.M.O. 3.30.030.A. should be dismissed because it was unconstitutional." *Trotter*, 60 Kan. App. 2d at 356. On appeal, the *panel* sua sponte reversed the district court's dismissal based on its consideration of the district court's authority to dismiss this second municipal conviction. The panel held that such consideration was "necessary to serve the ends of justice." 60 Kan. App. 2d at 357. In our view, this was error.

> "As we have previously cautioned, when 'an appellate court raises a new issue sua sponte, counsel for all parties should be afforded a fair opportunity to brief the new issue and present their positions to the appellate court before the issue is finally determined.'" *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016) (quoting *State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 [1982]).

The panel "provided the parties with a fair opportunity to address this apparent problem" at oral arguments. *Trotter*, 60 Kan. App. 2d at 357. Indeed, the panel even

17

permitted the parties to file supplemental briefing—but only as to "the issue of standing addressing overbreadth, right of assembly, the Fourth Amendment, and procedural due process." The panel's order for additional briefing did not permit the parties to present their views on the district court's dismissal of the second charge. By raising this dismissal and then denying the parties the opportunity to brief the issue—or, indeed, to respond in any way other than through spur of the moment answers in oral arguments—the panel overstepped its role.

We acknowledge the initial apparent inconsistency in our disapproval of the panel's dismissal of the second charge without briefing while we, as well, do not invite the parties to brief it. But this inconsistency evaporates upon closer inspection because we are not raising this issue sua sponte. Trotter's petition for review to this court challenged the panel's failure to address his claim that the City never briefed the district court's dismissal of his charges; as Trotter's brief before the panel argued, "The City did not brief or argue that the trial court improperly dismissed the cases with prejudice." We find merit in this general contention, although not on the precise grounds Trotter suggests. Once a party raises an issue of a court's error of law, our review of the error itself is unlimited. E.g., *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021).

Ultimately, it was the City's burden as appellant to establish that the district court erred, not Trotter's. E.g., *Hartman v. Stumbo*, 195 Kan. 634, 637, 408 P.2d 693 (1965) ("The burden remains always upon an appellant to show error in the ruling he seeks to overturn."). And while the City's Notice of Appeal conferred appellate jurisdiction over the district court's dismissal of both charges, the City's briefing included no argument as to the dismissal of the charge arising under W.M.O. 3.30.030.A. The City thus waived this argument. E.g., *State v. Tracy*, 311 Kan. 605, 610, 466 P.3d 434 (2020).

18

It is not the role of the appellate court to second-guess the matters which the prosecutor chooses to appeal—or to waive through absence of briefing—based on the appellate court's own instincts about the ends of justice. By doing so here, the panel erred. We thus reverse the panel's reversal of the district court's dismissal of the municipal violation of W.M.O. 3.30.030.A.

In light of our decision, we deny as moot Trotter's remaining claims.

CONCLUSION

We affirm the panel's rejection of Trotter's Fourth Amendment claim as to the Fourth Amendment implications of W.M.O. 3.06.030.A. We hold W.M.O. 3.06.030.A. to be unconstitutionally overbroad. We also hold that the panel erred by sua sponte reversing the district court's dismissal of a second municipal charge (and the district court's vacating of the underlying municipal conviction) when the City failed to brief that dismissal. We therefore affirm in part and reverse in part the panel's judgment and affirm the district court's dismissal of Trotter's charges.

19