NOT DESIGNATED FOR PUBLICATION

No. 124,412

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA, KANSAS,
*Appellee*,

v.

GABRIELLE GRIFFIE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed November 18, 2022. Affirmed.

*Dylan P. Wheeler*, of Depew Gillen Rathbun & McInteer, LC, of Wichita, for appellant.

*Nathaniel Johnson* and *Jan Jarman*, assistant city attorneys, and *Jennifer Magana*, city attorney, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

MALONE, J.:  The City of Wichita (City) charged Gabrielle Griffie with unlawful assembly under Wichita Municipal Code of Ordinances (W.M.O.) § 5.73.030 (2020) several days after she organized and participated in a protest on the streets of Wichita and the steps of its federal courthouse. The City's theory of the case was that Griffie planned the protest for the purpose of engaging in "disorderly conduct"—more specifically, engaging in "noisy conduct tending to reasonably arouse alarm, anger or resentment in others." W.M.O. § 5.24.010(c) (2020). After the municipal court found Griffie guilty, she appealed to the Sedgwick County District Court and requested a jury trial. Griffie argued

1

that the district court should strike down the "disorderly conduct" provision used to support the unlawful assembly charge as unconstitutionally overbroad because it prohibits a wide range of expressive conduct protected under the First Amendment to the United States Constitution. The district court denied Griffie's request, and a jury found her guilty of unlawful assembly under the "noisy conduct" definitional ordinance. Griffie appeals, renewing her constitutional challenge to the "noisy conduct" provision of W.M.O. § 5.24.010(c). For the reasons stated in this opinion, we reject Griffie's facial challenge to the constitutionality of the ordinance and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2020, a group called Project Justice ICT held a protest in downtown Wichita as a symbol of the group's solidarity with protesters in Portland, Oregon, who were engaging in ongoing protests over the murder of George Floyd by a Minneapolis, Minnesota police officer. Griffie served as the executive director of Project Justice ICT, helping the group to organize food drives, protests, and other community events.

Project Justice ICT advertised the event on Facebook, telling its supporters to "Bring shields, umbrellas, and other protective gear. We will be marching." The Wichita Police Department monitored the group's online activity and prepared for the event. Project Justice ICT failed to obtain a community event permit to close off the streets for its demonstration; this raised concerns by the police that the demonstration could obstruct traffic or even cause a pedestrian/vehicle collision. Despite the group's lack of a permit, the police decided not to interfere with the protest, and instead tried to block off the streets around the group's demonstration to limit the amount of contact with motorists.

On the day of the demonstration, about 40 to 60 people showed up at Century II in downtown Wichita to participate in the protest. They marched en masse, chanting various slogans—such as "No justice, no peace" and "Black lives matter"—as they walked down

2

the almost entirely empty streets. Griffie carried a megaphone and a homemade shield as she marched at the front of the group, chanting and leading the other protestors.

Despite the efforts by police to divert traffic away from the protest, during the group's march down the street, a man named Jeremy McTaggart came across the group while driving. The protestors were walking in the middle of the street obstructing the center two lanes of traffic leaving the outer lanes clear and unimpeded, but McTaggart did not move to the right lane because he was trying to make a left turn. At least one of the protesters—not Griffie—touched McTaggart's car and shouted at him. Griffie was a couple of car lengths ahead of the encounter and later testified that she did not see or hear it. After about 30 seconds, McTaggart drove away without further incident.

The protestors continued to march until they arrived at the federal courthouse in downtown Wichita. The group walked around to the front of the building and stayed on the footsteps of the courthouse for about 30 minutes, during which Griffie and others gave speeches to the crowd over megaphones. The group finally dispersed when it began to heavily rain. The police made no arrests during the protest, nor does it appear that the group had any interaction with police other than hurling insults at some of the officers who were blocking traffic and monitoring the march.

The entire protest was videotaped and posted on Facebook. Detective Marianna Hoyt reviewed the videotape and another officer, Lieutenant Drew Sielor, helped Hoyt identify Griffie out of the crowd of protestors. Hoyt eventually decided to charge Griffie with unlawful assembly under W.M.O. § 5.73.030. The complaint alleged that Griffie had "participat[ed] in the meeting or coming together of at least five persons for the purpose of engaging in conduct constituting disorderly conduct . . . by blocking traffic."

Griffie proceeded to a bench trial before the Wichita Municipal Court and was found guilty. She then appealed her conviction to the Sedgwick County District Court. At

the de novo trial, the assistant city attorney noted that the City was not relying on the brawling, fighting, or disturbing an assembly varieties of disorderly conduct in W.M.O. § 5.24.010(a) and (b), and instead had "really honed [the case] down [to] fighting words or conduct" under W.M.O. § 5.24.010(c). Griffie's attorney argued that the particular provision in the ordinance on noisy conduct needed to be construed to only encompass fighting words under *State v. Huffman*, 228 Kan. 186, 612 P.2d 630 (1980). The district court disagreed, finding Griffie's argument was "not consistent with the law" and that both her words and conduct could be considered separately.

McTaggart was the first witness to take the stand. Sielor and Hoyt also testified for the City and the two-hour videotape of the entire protest was played for the jury. After the City rested its case-in-chief, Griffie moved for acquittal. The district court denied her motion after walking through the elements of the unlawful assembly offense stating, "The simple fact that she was engaged in this meeting of not less than five people, for purpose of this meeting was for the engagement of noisy conduct in such a nature it would tend to reasonably arouse alarm, anger, or resentment in others." Griffie's attorney requested permission to submit a trial brief requesting reconsideration, which the court granted.

The next morning, before Griffie presented evidence, the district court addressed the arguments raised in her brief. Griffie argued that the "noisy conduct" portion of the definition of disorderly conduct was "either so unconstitutionally broad and vague that it should either be struck down, or we can . . . authoritatively construe it in such a matter [*sic*] that it only encapsulates unprotected speech." Essentially, Griffie asked the court to instruct the jury that the City was required to show that she "used fighting words and unprotected form[s] of speech during [the] assembly" and to drop the "noisy conduct" portion of the subsection defining the offense to prevent the possibility of incidentally criminalizing her for engaging in protected speech.

4

In response to these arguments, the City clarified that it was only arguing that Griffie's *conduct* constituted disorderly conduct, not that she had used fighting words. The City elected to proceed under the "noisy conduct" portion of W.M.O. § 5.24.010(c), omitting the "fighting words" provision. Griffie again alleged the City was trying to stifle the free expression of ideas, but the district court denied her motion for reconsideration, explaining that her conduct was "well past any expressive activities, and that played no role in the expression of the ideas." The court also denied Griffie's motion regarding the constitutionality of the "noisy conduct" portion of the disorderly conduct ordinance.

After the district court rendered its decision, Griffie testified on her own behalf. Griffie, who owns a vintage shop in downtown Wichita, stated that she got involved in organizing political activist groups and was eventually asked to serve as the executive director of Project Justice ICT. The group held distribution events as well as organized protests. Griffie stated that before any protests, she would tell participants that they were not going to engage in or cause fights or otherwise agitate people, and that their job was simply to "march down the street, do some chants, bring awareness or whatever." On cross-examination, Griffie admitted that on July 29, 2020, the protest group intentionally tried to block the streets of Wichita and that was one of the reasons they were there.

Griffie's attorney submitted a proposed instruction that required the jury to find that she personally engaged in conduct constituting disorderly conduct and argued that she could not be found guilty based on the actions of the other protesters that she did not actively encourage, but the district court denied the requested instruction. As for the elements of the offense of unlawful assembly, the district court instructed the jury:

> "The defendant is charged with Unlawful Assembly. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

5

"1.  Defendant engaged in a meeting or coming together of not less than five persons.

"2.  The purpose of the meeting or coming together was for engaging in conduct constituting disorderly conduct.

"3.  This act occurred on or about the 29th day of July, 2020, in Wichita, Kansas.

"Disorderly conduct is defined as engaging in noisy conduct of such a nature that it would tend to reasonably arouse alarm, anger or resentment in others and that one knew or should have known that the conduct would alarm, anger, or disturb others or provoke an assault or other breach of the peace."

In closing argument, the City emphasized that Griffie was being prosecuted for her disorderly conduct and not the content of her speech. The City's main argument was that Griffie was guilty of unlawful assembly based on her conduct of blocking traffic. The City clarified that Griffie had intended to block the streets, that she had admitted to engaging in noisy conduct during the demonstration, and that any reasonable person would have been upset by her conduct during the protest. Griffie's attorney stressed that Griffie had intended for the demonstration to be peaceful and that she had not directed anyone to engage in any violent conduct. He concluded that the City had failed to establish that Griffie's intent was for the group to engage in disorderly conduct.

The jury found Griffie guilty of unlawful assembly as charged by the City under the noisy conduct provision of W.M.O. § 5.24.010(c). The district court ordered Griffie to pay a $200 fine with no jail term and authorized community service instead of the fine. Griffie timely appealed the district court's judgment.

IS WICHITA MUNICIPAL ORDINANCE § 5.24.010(C)
UNCONSTITUTIONALLY OVERBROAD?

Griffie claims that the "noisy conduct" provision of municipal ordinance W.M.O. § 5.24.010(c), which defines disorderly conduct and was used to support her conviction

for unlawful assembly, is facially unconstitutional because it broadly prohibits noisy conduct regardless of whether the conduct is also expressive and protected under the First Amendment. Griffie asserts that W.M.O. § 5.24.010(c), or at least part of it, should be struck down as it is not possible to construe the ordinance to comport with First Amendment protections afforded to expressive conduct. Griffie makes clear that she is bringing only a facial challenge to the constitutionality of the ordinance, and she is not challenging the constitutionality of the ordinance as applied to her conduct in this case. Likewise, Griffie is not challenging the sufficiency of the evidence to support her conviction, nor is she challenging on appeal the jury instructions given by the district court at her trial. An issue not briefed is waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

The City asserts that W.M.O. § 5.24.010(c) is not unconstitutionally overbroad. Alternatively, the City argues that even if the ordinance is unconstitutionally overbroad, it need not be stricken and can be saved with a proper jury instruction. The City emphasizes that it prosecuted Griffie for her disorderly conduct on July 29, 2020, not for the content of her speech, and that her First Amendment rights were not violated.

The constitutionality of a statute or ordinance is a question of law subject to unlimited review. *State v. Boettger*, 310 Kan. 800, 803, 450 P.3d 805 (2019). Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity—that is, courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018). Griffie carries the burden to establish that the ordinance is unconstitutional. See *State v. Williams*, 299 Kan. 911, 920, 329 P.3d 400 (2014).

The parties agree that Griffie has standing to raise this challenge and that she preserved the matter by raising it before the district court. A party challenging a law as

unconstitutionally overbroad need not establish personal injury arising from that law when First Amendment rights are affected. 299 Kan. at 919. This is "'because the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression.'" 299 Kan. at 919.

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "'[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S. Ct. 1700, 152 L. Ed. 2d 771 [2002]). And the First Amendment's protections extend to state laws through the Equal Protection Clause of the Fourteenth Amendment. See *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95-96, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972).

"The First Amendment overbreadth doctrine may be implicated when a criminal statute makes conduct punishable, which under some circumstances is constitutionally protected from criminal sanctions." *City of Wichita v. Trotter*, 316 Kan. 310, Syl. ¶ 3, 514 P.3d 1050 (2022). Almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target, and (2) there is no satisfactory method of severing the law's constitutional from its unconstitutional applications. *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 6, 13 P.3d 887 (2000). "Where a potentially overbroad statute regulates conduct, and not merely speech, the overbreadth must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Trotter*, 316 Kan. 310, Syl. ¶ 4. "The overbreadth doctrine should be employed sparingly and only as a last resort." *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005).

8

Griffie was convicted of unlawful assembly under W.M.O. § 5.73.030(1), which defines the offense as

"the meeting or coming together of not less than five persons for the purpose of engaging in conduct constituting either *disorderly conduct as defined by Section 5.24.010* of this Code and amendments thereto, or a riot, as defined by Section 5.73.050 of this Code and amendments thereto; or when in a lawful assembly of not less than five persons, agreeing to engage in such conduct." (Emphasis added.)

Although Griffie was convicted of unlawful assembly, she makes no direct claim that her conviction violates her First Amendment right to peaceably assemble. She only challenges the City's disorderly conduct ordinance, used to support the unlawful assembly charge. W.M.O. § 5.24.010 provides:

"Disorderly conduct is, one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace:
(a) Engaging in brawling or fighting; or
(b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or
(c) Using fighting words or *engaging in noisy conduct tending to reasonably arouse alarm, anger or resentment in others.*
"As used in this section, 'fighting words' means words that by their very utterance inflict injury or tend to incite the listener to an immediate breach of peace." (Emphasis added.)

The language of W.M.O. § 5.24.010 is virtually identical to K.S.A. 2021 Supp. 21-6203, previously codified at K.S.A. 21-4101. This statute has been part of the Kansas criminal code since 1969. Over 40 years ago, the Kansas Supreme Court addressed an overbreadth challenge to a similarly worded disorderly conduct statute in *Huffman*, 228 Kan. 186. The statute, and subsection, at issue in that case—K.S.A. 21-4101(c)—was

9

later amended by the Legislature and replaced with K.S.A. 21-6203 in response to the ruling in *Huffman*, which found that the phrase "[u]sing offensive, obscene, or abusive language" must be construed as meaning solely "fighting words" in order to survive constitutional scrutiny for overbreadth. 228 Kan. at 193. Thus, K.S.A. 2021 Supp. 21-6203, as well as W.M.O. § 5.24.010, are both missing the offending language and have inserted "fighting words" in their place. Unfortunately, for the question now before this court, the *Huffman* court did not address the second half of subsection (c) prohibiting "noisy conduct"—primarily because the defendant's conviction in that case was based on his language, not his conduct.

Griffie's attack focuses on the "noisy conduct" portion of W.M.O. § 5.24.010(c). Griffie makes clear that she is bringing only a facial challenge to the constitutionality of the ordinance. She is trying to strike the ordinance, or at least part of it, because she asserts it is impossible to construe the ordinance to comport with First Amendment protections afforded to expressive conduct. Griffie could have—but is not—challenging the constitutionality of the ordinance as applied to her conduct in this case.

We begin by observing that W.M.O. § 5.24.010(c) is content neutral. That is, it is immaterial what the conduct is—aside from it being noisy and tending to reasonably arouse alarm, anger, or resentment. There is nothing in the plain language of the ordinance that suggests it was enacted to target the content of any constitutionally protected speech or the expression of any constitutionally protected conduct. But we also observe that "content neutrality does not immunize an ordinance from overbreadth scrutiny." *Trotter*, 316 Kan. at 313.

W.M.O. § 5.24.010(c) does not simply prohibit "noisy conduct." Such a proscription would likely be constitutionally overbroad. But we believe the language of the ordinance includes three components that allow it to withstand facial constitutional scrutiny for overbreadth. First, the ordinance includes a scienter or mens rea component.

10

The ordinance is only violated when the person "knows or should know" that this conduct is prohibited. Second, the ordinance has a focused actus reus component. It only applies to noisy conduct "tending to reasonably arouse alarm, anger or resentment in others." Third, the ordinance includes an objective component. Griffie argues that the ordinance can be applied subjectively by law enforcement officers depending on their personal beliefs about what conduct may arouse alarm, anger, or resentment in others. But subsection (c) of the ordinance expressly includes the word "reasonably" which provides an objective standard for application by law enforcement officers and the courts.

Griffie relies heavily on a decision rendered by the Supreme Court of Minnesota in *State v. Hensel*, 901 N.W.2d 166 (Minn. 2017). In *Hensel*, the defendant was convicted of disorderly conduct for disturbing a city council meeting by displaying signs that depicted dead and deformed children and by refusing to move her chair back into the public-seating area. The defendant brought an overbreadth challenge against a state statute nearly identical to subsection (b) of W.M.O. § 5.24.010—defining disorderly conduct as an act that "disturbs" a meeting or assembly. 901 N.W. 2d at 171. After determining that the provision was unconstitutionally overbroad, the *Hensel* court found that the subsection could not be cured by any possible construction. 901 N.W.2d at 176-81. But *Hensel* provides little support for Griffie's claim that W.M.O. § 5.24.010(c) is unconstitutionally overbroad because the case addresses language found in subsection (b) and does not address the "noisy conduct" portion in subsection (c) of the disorderly conduct ordinance.

The City asserts that disorderly conduct statutes and ordinances specific to noisy conduct "have been on the books for decades" and cites five unpublished cases from this court upholding convictions for disorderly conduct. The closest case factually is *State v. Vehige*, No. 116,202, 2017 WL 3203381 (Kan. App. 2017) (unpublished opinion). In that case, Vehige, a self-described political activist, routinely videotaped encounters with Emporia police officers and posted the videos on Facebook and YouTube as his way to

promote police accountability and transparency and to stop police brutality. In one incident, Vehige interfered with three off-duty officers who were present during a bar fight. Vehige held his camera about 2 to 2 1/2 feet from the officers and shouted questions at them while they were trying to follow one of the men involved in the fight.

The State charged Vehige with disorderly conduct in violation of K.S.A. 2016 Supp. 21-6203 that criminalizes "using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others." 2017 WL 3203381 at *7. Vehige argued that his actions consisted of constitutionally protected speech and could not have aroused alarm, anger, or resentment in the officers. A jury convicted Vehige of disorderly conduct, and he challenged the sufficiency of the evidence on appeal. Finding that Vehige failed to designate a sufficient record for the court to review his claim, this court affirmed the disorderly conduct conviction. 2017 WL 3203381 at *7-8. See also *State v. Hughs*, No. 118,281, 2018 WL 2374766, at *2 (Kan. App. 2018) (unpublished opinion) (affirming disorderly conduct conviction of defendant who engaged in fighting and brawling); *State v. Mead*, No. 115,989, 2017 WL 4082240, at *4-5 (Kan. App. 2017) (unpublished opinion) (affirming disorderly conduct conviction stemming from defendant's brawl at motorcycle rally); *City of Paola v. Ammel*, No. 96,301, 2007 WL 2767953, at *3 (Kan. App. 2007) (unpublished opinion) (affirming disorderly conduct conviction where defendant had insulted and fought police officers in a public library); *State v. Heyder*, No. 82,810, 2000 WL 36745844, at *1-2 (Kan. App. 2000) (unpublished opinion) (affirming disorderly conduct conviction arising from defendant's verbal altercation with toll booth operator and highway patrol trooper).

Griffie points out that all the unpublished opinions from this court cited by the City address only the sufficiency of the evidence to support the disorderly conduct convictions. None of the cases address challenges against the Kansas disorderly conduct statute based on unconstitutional overbreadth. But even without the court addressing

12

constitutional challenges, the cases appear to provide examples where courts have enforced the Kansas disorderly conduct statute's plainly legitimate sweep.

Neither party cites any caselaw that directly addresses the constitutionality of criminal statutes or ordinances prohibiting a person from engaging in noisy conduct, and there does not appear to be many such cases in any jurisdiction. But the few cases we have found that directly address statutes or ordinances prohibiting noisy conduct uphold the constitutionality of such laws. See *Idaho v. Cobb*, 132 Idaho 195, 199-200, 969 P.2d 244 (1998) (disorderly conduct ordinance proscribing "violent, noisy, or riotous conduct" did not regulate a significant amount of constitutionally protected conduct and thus satisfied overbreadth standards); *City of St. Louis v. Tinker*, 542 S.W.2d 512 (Mo. 1976) (ordinance proscribing verbal conduct which is noisy, riotous or disorderly and which is calculated to provoke breach of peace is neither vague nor constitutionally overbroad); *New Jersey v. Besson*, 110 N.J. Super. 528, 536, 266 A.2d 175 (1970) (statute providing that any person who by noisy or disorderly conduct disturbs or interferes with any place of assembly is valid on its face and not unconstitutional as void for vagueness).

Finally, in a letter submitted under Kansas Supreme Court Rule 6.09 (2022 Kan. S. Ct. R. at 40), Griffie points to *City of Wichita v. Trotter*, 316 Kan. 310, as constituting "the most recent, controlling Kansas authority to-date addressing the overbreadth doctrine under the First Amendment." *Trotter* concerned a Wichita licensing ordinance for "after-hours establishments," generally defined as "any venue for a series of events or ongoing activity or business . . . to which the public is invited or allowed [to attend] . . . between midnight and 6:00 a.m." 316 Kan. at 315. Our Supreme Court struck down the ordinance because its plain language was broad enough to penalize citizens hosting gatherings in private residences in violation of the First Amendment guarantee of freedom of assembly. The court found that while the city "has not attempted to ban *all* gatherings between midnight and 6 a.m., the broad sweep of its regulation captures the lion's share of such activity—including much activity within private homes, residentially zoned or not." 316

13

Kan. at 320. The court also found that it was unable to "sever the ordinance's unconstitutional applications from its constitutional ones." 316 Kan. at 320.

*Trotter* does not control the outcome of Griffie's case. As we have already noted, Griffie makes no direct claim that her conviction violates her First Amendment right to peaceably assemble. She challenges only the definitional portion of the disorderly conduct ordinance as violating her constitutionally protected right of "expressive conduct." There is nothing about Griffie's conviction that infringes upon her right to peaceably assemble in her own home. More importantly, the *Trotter* court found that the language of the licensing ordinance was so sweeping that it "purports to control most activity between midnight and 6 a.m." 316 Kan. at 317. Griffie fails to establish that the language of the disorderly conduct ordinance is so broad that it criminalizes most expressive conduct that is generally protected under the First Amendment.

W.M.O. § 5.24.010(c) plainly has a legitimate sweep. In a typical scenario, the ordinance would prohibit a person from playing loud music outside at night in a residential area preventing neighbors from getting any sleep. Or the ordinance might be used to prohibit an inebriated person from yelling and hurling insults at citizens trying to walk along a public sidewalk. But enforcement of the ordinance becomes problematic when it might be viewed as an attempt by the government to suppress political protest.

The First Amendment prohibits the government from passing laws abridging the freedom of speech or the right of the people to peaceably assemble. Griffie and the members of Project Justice ICT were engaged in a form of political protest in Wichita on July 29, 2020, and the City cannot pass a law that infringes on their right to peaceably assemble to protest. But W.M.O. § 5.24.010(c), on its face, does not make it unlawful for a person to engage in political protest. Griffie and the members of her group were free to protest in a public forum against police misconduct provided their own conduct did not *reasonably* arouse alarm, anger, or resentment in others—an objective standard of

14

enforcement. Griffie did not engage in disorderly conduct unless she knew or should have known that her acts would "alarm, anger or disturb others or provoke an assault or other breach of the peace." W.M.O. § 5.24.010. Whether Griffie crossed this line when her group intentionally blocked traffic on the streets of Wichita was a question presented for the jury to decide. As we noted before, Griffie does not argue that the City's disorderly conduct ordinance violates the First Amendment as applied to the facts of her case. Griffie's sole claim on appeal is that the language of W.M.O. § 5.24.010(c) is so overbroad that we must declare the ordinance unconstitutional on its face.

Finally, we reiterate that the City prosecuted Griffie because she and her group blocked traffic on the streets of Wichita; the volume of the protest chants was not the focus of the evidence at trial. Indeed, the facts do not present a classic "noisy conduct" case. Blocking traffic is not a specified or defined form of disorderly conduct. But Griffie is not challenging the sufficiency of the evidence to support her conviction.

To begin to wrap up, does W.M.O. § 5.24.010(c) contain broad language? Yes. Is the ordinance applicable to constitutionally protected acts? Potentially. But this is not the test we apply to Griffie's facial challenge to the constitutionality of the ordinance. Almost every law is potentially applicable to constitutionally protected acts. To bring a successful overbreadth challenge, Griffie must first show that the protected activity is a significant part of the law's target. *Whitesell*, 270 Kan. 259, Syl. ¶ 6. Stated another way, the overbreadth must not only be real, but substantial as well, judged in relation to the law's plainly legitimate sweep. *Trotter*, 316 Kan. 310, Syl. ¶ 4.

We find that Griffie fails to satisfy this first step in meeting her burden to show that W.M.O. § 5.24.010(c) is unconstitutional on its face. As a result, we need not address whether there is any satisfactory method of severing the law's constitutional from its unconstitutional applications. Because Griffie's facial constitutional challenge to the

15

City's ordinance is the only claim she brings on appeal, we find no basis to overturn her conviction or to disturb the district court's judgment.

Affirmed.

* * *

LAHEY, J., dissenting:  For engaging in "noisy conduct tending to reasonably arouse alarm, anger or resentment in others," Griffie was found guilty of unlawful assembly. Her conviction should not stand because the ordinance at the core of her conviction, Wichita Municipal Ordinance (W.M.O.) § 5.24.010(c) (2022), applies to a vast array of speech and expressive conduct protected by the First Amendment.

The conduct on which the conviction is based was clearly political in nature. The "noisy conduct" consisted of marching, chanting slogans such as "No justice, No peace," "No Trump, No KKK, No Fascist USA," "Black Lives Matter," and speeches given in support of the protestors' views via megaphone. The speech and conduct were inherently expressive and intended to convey a plainly political message. The City asserts that the particular conduct deemed offensive was "blocking traffic," not the political messaging of the protestors. But blocking traffic is not a specified or defined form of disorderly conduct, and neither the city ordinance nor the jury instructions mention "blocking traffic." Rather, the ordinance and instructions required the jury to find "noisy conduct," and the only noise on the nearly vacant streets of Wichita on July 29, 2020, was that produced by Griffie's political protest. Noise of that sort is protected by the First Amendment.

The constitutional problem with the "noisy conduct" form of disorderly conduct is not that the ordinance was passed with the intention of targeting a specific political message. The problem is that it is overbroad and includes within its scope, without exception, protected First Amendment speech and conduct. Under the ordinance, a criminal penalty attaches to noisy conduct whether it occurs in a private home or in the

16

public square—it applies to political debates, meetings, and conventions, and at all times of the day or night. The scope is constitutionally significant and unmistakably chills free speech and expressive conduct. I would find the "'mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression.'" *State v. Williams*, 299 Kan 911, 919, 329 P.3d 400 (2014). The recent Supreme Court decision of *City of Wichita v. Trotter*, 316 Kan. 310, 514 P.3d 1050 (2022), involves a First Amendment freedom of association challenge, something not argued here. But the present ordinance suffers from the same overbreadth problem as the ordinance struck down in *Trotter*—it subjects important and significant protected First Amendment conduct to criminal prosecution.

The majority opinion concedes that a proscription simply prohibiting "noisy conduct" would likely be constitutionally overbroad but cites three components in the language of the ordinance that allows it to withstand facial scrutiny for overbreadth.

First, the majority notes the ordinance includes a scienter or mens rea component—the ordinance is only violated when the person "'knows or should know'" that his or her conduct would arouse alarm or anger in others. Slip op at 11. Second, the majority finds the ordinance has a narrowly focused actus reus component because it only applies to noisy conduct "'tending to reasonably arouse alarm, anger or resentment in others.'" Slip op at 11. And third, the majority finds use of the term "'reasonably'" provides the ordinance with an objective standard by which noisy conduct can be evaluated. Slip op at 11. "Griffie and the members of her group were free to protest in a public forum against police misconduct provided their own conduct did not *reasonably* arouse alarm, anger, or resentment in others—an objective standard of enforcement." Slip op at 14-15. I respectfully disagree with the majority's rationale.

The objective standard identified by the majority applies only to the *effect* the conduct has on others rather than the conduct itself. And the standard contained in the

17

ordinance includes conduct "tending" to reasonably arouse alarm. The inclusion of conduct which *tends* to arouse alarm or anger operates to *increase* the breadth of protected First Amendment conduct subject to criminal prosecution and undercuts the reasonableness standard. The ordinance is not narrowly focused; it is impossibly broad and vague. "Tend" means: "1. To be disposed toward (something). 2. To serve, contribute, or conduce in some degree or way; to have a more or less direct bearing or effect. 3. To be directed or have a tendency to (an end, object, or purpose)." Black's Law Dictionary 1770 (11th ed. 2019). Any person who participates in a noisy political rally becomes subject to criminal prosecution when they *should know* that their First Amendment protected speech *could contribute in some way* to anger or disturb another person. The range of prohibited speech and conduct is unacceptably broad—something as common and ordinary as hypocrisy in speech or action by a politician can meet this test. Talking about or protesting all sorts of controversial topics tends to disturb or anger others and is the reason it is advisable to avoid talking about politics in social settings. But the government has no business restricting such speech or conduct.

Political speech and conduct are routinely and intentionally used to arouse anger, alarm, or resentment in others in order to bring attention to a political problem or to prompt a desired political result—and such intentional conduct is legitimate and protected by the First Amendment. United States Supreme Court precedents recognize that a principal "'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" *Texas v. Johnson*, 491 U.S. 397, 408-09, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S. Ct. 894, 93 L. Ed. 1131 [1949]).

I disagree with the majority that the reasonableness standard somehow restricts the scope of conduct subject to criminal prosecution or insulates it from being overbroad. The inclusion of the negligence standard—holding a person criminally responsible

18

because he or she "*should know*" their conduct or speech will *tend to cause* alarm or anger—significantly enlarges the broad swath of conduct subject to the ordinance. The Minnesota case relied upon by Griffie, *State v. Hensel*, 901 N.W.2d 166 (Minn. 2017), is not a perfect analogue for the present case and distinguishable in many respects. But *Hensel* got it right in finding that allowing a statute to reach all types of acts, intentional or not, that merely have a tendency to disturb others, makes it more likely the statute will "have a chilling effect on expression protected by the First Amendment." 901 N.W.2d at 174.

Given the overbreadth of the City ordinance, the appropriate remedy to preserve First Amendment protections is to suspend enforcement of W.M.O. § 5.24.010(c):

> "The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), suffices to invalidate *all* enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression' . . . . See also *Virginia v. Black*, 538 U.S. 343, 367, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); *New York v. Ferber*, 458 U.S. 747, 769, n. 24, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); *Dombrowski v. Pfister*, 380 U.S. 479, 491, and n. 7, 497, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).
>
> "We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. See *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977); *NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963). Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech,

*Dombrowski*, [380 U.S. at 486-87]—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech." *Virginia v. Hicks*, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003).

Political speech is central to the First Amendment's meaning and purpose. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 329, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010). Because the noisy conduct portion of the City's disorderly conduct ordinance does not exclude any protected First Amendment speech or conduct from its scope, all protected First Amendment speech and conduct is subject to criminal penalty if it constitutes "noisy conduct." This broad application of a criminal penalty will likely cause other people to refrain from engaging in constitutionally protected speech and conduct. Short of rewriting the ordinance, there exists no satisfactory method of severing the ordinance's constitutional applications from its unconstitutional applications. I would reverse Griffie's conviction, find the "noisy conduct" portion of W.M.O. § 5.24.010(c) constitutionally overbroad, and suspend all enforcement of that portion of the law.